[982 NE2d 76, 958 NYS2d 314]

RICHARD M. METZ, as Personal Representative of the Estate of MARY HELEN METZ, Deceased, et al., Respondents, v STATE OF NEW YORK, Appellant.

Argued October 18, 2012; decided November 29, 2012

**POINTS OF COUNSEL**

*Eric T. Schneiderman, Attorney General*, Albany (*Andrew D. Bing, Barbara D. Underwood* and *Laura Etlinger* of counsel), for appellant. I. The claims must be rejected under the "public duty" rule. (*O'Connor v City of New York*, 58 NY2d 184; *McLean v City of New York*, 12 NY3d 194; *Valdez v City of New York*, 18 NY3d 69; *Riss v City of New York*, 22 NY2d 579; *Motyka v City of Amsterdam*, 15 NY2d 134; *Lauer v City of New York*, 95 NY2d 95; *Pelaez v Seide*, 2 NY3d 186; *Miller v State of New York*, 62 NY2d 506; *Worth Distribs. v Latham*, 59 NY2d 231; *Sanchez v Village of Liberty*, 42 NY2d 876.) II. Alternatively, if the Court does not reject the claims on the ground of no special duty, it should reinstate the State of New York's immunity defense. (*Valdez v City of New York*, 18 NY3d 69; *Haddock v City of New York*, 75 NY2d 478.)

*Hacker Murphy, LLP*, Latham (*James E. Hacker* of counsel), for respondents. I. The State of New York's affirmative defense was properly dismissed pursuant to CPLR 3211 (b). (*Tango v Tulevech*, 61 NY2d 34; *In re Dorothy J v City of New York*, 749 F Supp 2d 50; *Haddock v City of New York*, 75 NY2d 478.) II. On the record before this Court the claims should not be rejected under the "public duty" rule. (*O'Connor v City of New York*, 58

NY2d 184; *Pelaez v Seide*, 2 NY3d 186; *Lauer v City of New York*, 95 NY2d 95; *Valdez v City of New York*, 18 NY3d 69; *Chiarini v County of Ulster*, 9 AD3d 769; *Boland v State of New York*, 218 AD2d 235; *Racine v Morris*, 201 NY 240; *Van Gaasbeck v Webatuck Cent. School Dist. No. 1*, 21 NY2d 239; *Smullen v City of New York*, 28 NY2d 66; *Steitz v City of Beacon*, 295 NY 51.)

*Michael A. Cardozo, Corporation Counsel*, New York City (*Kristin M. Helmers* and *Norman Corenthal* of counsel), for City of New York, amicus curiae. The claims should have been dismissed for failure to plead and demonstrate facts establishing a special duty. (*Valdez v City of New York*, 18 NY3d 69; *Lauer v City of New York*, 95 NY2d 95; *Pelaez v Seide*, 2 NY3d 186; *Smullen v City of New York*, 28 NY2d 66; *O'Connor v City of New York*, 58 NY2d 184; *Sanchez v Village of Liberty*, 42 NY2d 876; *Motyka v City of Amsterdam*, 15 NY2d 134; *McLean v City of New York*, 12 NY3d 194; *Worth Distribs. v Latham*, 59 NY2d 231; *Garrett v Holiday Inns*, 58 NY2d 253.)

**OPINION OF THE COURT**

Chief Judge LIPPMAN.

The issue presented by this appeal is whether the State can be held liable to individuals who were injured and the personal representatives of those who lost their lives due to the tragic capsizing of a public vessel—the Ethan Allen. We conclude that because the State owes no special duty to these claimants, the claims that the State's inspectors failed to certify safe passenger capacity on the vessel must be dismissed.

The Ethan Allen was a public vessel operating as a tour boat on Lake George. In 2005, 20 passengers were killed and several others were injured when the boat capsized and sank. As a public vessel, the Ethan Allen had been subject to yearly state inspections, at which an inspector appointed by the Commissioner of the New York State Office of Parks, Recreation and Historic Preservation (OPRHP) would issue a certificate indicating, among other things, the vessel's maximum passenger capacity. At the time the vessel sank, it had been carrying 47 passengers and 1 crew member, within the 48-passenger maximum set forth in the certificate of inspection.

The State regulates the use of public vessels under the Navigation Law.* In order to operate a public vessel upon the state's waters, a certificate of inspection is required (see Navigation Law § 50). An inspector must carefully examine the vessel and its equipment and, "if satisfied that [the ship] is in all respects safe and conforms to the requirement[s] of [the Navigation Law], shall" execute the certificate of inspection (Navigation Law §§ 63, 13). The inspector is also required to determine the number of passengers that can be safely transported and that number—along with the number of crew members necessary to safely operate the vessel—must be set forth in the certificate of inspection (see Navigation Law §§ 13, 63).

The Ethan Allen was constructed in 1964 and its first inspections were conducted by the United States Coast Guard. The vessel's last certificate of inspection from the Coast Guard set forth a maximum passenger capacity of 48 persons and 2 required crew members, for a total capacity of 50 persons. From 1979, when OPRHP began certifying the ship, to the time of the accident in 2005, the passenger capacity was consistently certified at 48 persons. This was so, despite the fact that the Ethan Allen was modified in 1989—replacing its canvas canopy with a canopy made of wood. Several state inspectors testified at their examinations before trial that they did not independently verify the vessel's passenger capacity by conducting a stability test, but rather relied on the number certified from the previous year. For instance, one inspector agreed that the number was "rubber stamped" based on the capacity from the prior certificate of inspection and another referred to the passenger capacity certified by the Coast Guard as "gospel."

The 48-passenger limit certified by the state inspectors was, however, much higher than the level at which the vessel could safely be operated. Notably, since this accident, the State has increased the average weight per passenger from 140 pounds—an approximation apparently adopted in the 1950s and utilized by the Coast Guard—to 174 pounds.

Claimants commenced this action against the State alleging that it had been negligent in certifying an unsafe passenger

---

* " 'Public Vessel' shall mean and include every vessel which is propelled in whole or in part by mechanical power and is used or operated for commercial purposes on the navigable waters of the state; that is either carrying passengers, carrying freight, towing, or for any other use; for which a compensation is received" (Navigation Law § 2 [6] [a]).

capacity, resulting from the use of outdated passenger weight criteria, and in failing to require a new stability assessment after the vessel had been significantly modified. The State answered raising several defenses, including governmental immunity.

The Court of Claims denied claimants' motion to dismiss the State's affirmative defense of immunity and denied the State's cross motion for summary judgment (27 Misc 3d 1209[A], 2010 NY Slip Op 50635[U] [2010]). The court found insufficient evidence to allow it to determine whether the inspections were proprietary or governmental in nature. In addition, the court found issues of fact as to whether the inspections were ministerial or discretionary acts.

The Appellate Division modified by granting claimants' motion to dismiss the State's affirmative defense, dismissed the affirmative defense and, as so modified, affirmed (86 AD3d 748 [3d Dept 2011]). The Court found that the inspections were a governmental function, but concluded that the State had failed to demonstrate that its inspectors had in fact exercised any discretion in certifying the vessel's passenger capacity. The Appellate Division granted the State's motion for leave to appeal to this Court, certifying the following question for our review: "Did this Court err, as a matter of law, in modifying, on the law, the order of [the Court of Claims], by reversing so much thereof as denied claimants' motion to dismiss defendant's affirmative defense of sovereign immunity; granting said motion and dismissing the affirmative defense; and, as so modified, affirming the order?" We reverse and answer the certified question in the affirmative.

As we recently made clear in *Valdez v City of New York* (18 NY3d 69, 80 [2011]), claimants must first establish the existence of a special duty owed to them by the State before it becomes necessary to address whether the State can rely upon the defense of governmental immunity. In that vein, it is well settled that the State "is not liable for the negligent performance of a governmental function unless there existed 'a special duty to the injured person, in contrast to a general duty owed to the public' " (*McLean v City of New York*, 12 NY3d 194, 199 [2009], quoting *Garrett v Holiday Inns*, 58 NY2d 253, 261 [1983]).

Plainly, the inspections at issue here are consistent with those

that we have deemed governmental functions. The vessel inspections are undertaken by the State for safety purposes and are akin to inspections conducted by a municipality when issuing certificates of occupancy or determining compliance with fire and safety codes (*see Worth Distribs. v Latham*, 59 NY2d 231, 237 [1983]; *Garrett*, 58 NY2d at 261).

We have recognized three ways in which a special relationship can be formed, resulting in a special duty—

> " '(1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation' "
> (*McLean*, 12 NY3d at 199 [citations omitted]).

Here, claimants focus on the State's alleged violation of its duty under the Navigation Law.

"[I]n the absence of some special relationship creating a duty to exercise care for the benefit of particular individuals, liability may not be imposed on a municipality for failure to enforce a statute or regulation" (*O'Connor v City of New York*, 58 NY2d 184, 192 [1983]). The statutory scheme at issue here does require inspectors to issue a certificate of inspection indicating that the vessel is safe and, specifically, certifying the number of passengers the vessel can safely transport (*see* Navigation Law §§ 13, 63). However, these statutory obligations do not create a special duty of care owed by the State to particular passengers. Rather, this case is similar to *O'Connor*, where the City's inspector either failed to observe a defect in the gas piping system or failed to insist that such defect be corrected before certifying that the system satisfied the applicable building department rules and regulations. We observed that those regulations were intended to benefit the persons who were injured in the explosion that ensued after the defective gas system was activated "but in the broad sense of protecting all members of the general public similarly situated" (*O'Connor*, 58 NY2d at 190). There, as here, the provisions at issue—although clearly designed to protect public safety—did not create a duty to particular individuals.

Moreover, recognizing a private right of action would be incompatible with the legislative design. The Navigation Law does not provide for governmental tort liability, but instead for

fines and criminal penalties to be imposed upon vessel owners and operators (*see e.g.* Navigation Law § 62 [negligence on the part of vessel owners/employees that results in the death of a passenger is a class E felony]; Navigation Law §§ 58, 73-b [an owner or operator who overloads the vessel beyond the designated passenger capacity will be guilty of a misdemeanor]). In addition, when the legislature amended the Navigation Law in response to this tragedy, it imposed additional safety standards and enhanced certain penalties, but still did not provide for a private right of action (*see* L 2007, ch 320). Under these circumstances, we can infer that the legislature has determined that these penalties are the best way to enforce violations of the Navigation Law and that the failure to establish a private right of action against the State was deliberate (*see e.g. McLean*, 12 NY3d at 200-201).

Although the law is clear, the upshot is that, regardless of any negligence on the part of the State, the victims of this disastrous wreck are essentially left without an adequate remedy. The legislature currently has a proposal before it to require public vessels to carry marine protection and indemnity insurance (2011 NY Assembly Bill A6699). We note that such a requirement—had it existed—might have been able to provide a modicum of relief here.

In light of our determination, it is unnecessary to address the parties' remaining contentions.

Accordingly, the order of the Appellate Division should be reversed, with costs, the claims dismissed and the certified question answered in the affirmative.

Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order reversed, with costs, the claims dismissed and the certified question answered in the affirmative.