*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   October 22, 2015                    520371
_____

JO DREVER,
                         Respondent,

        v                                        MEMORANDUM AND ORDER

STATE OF NEW YORK,
                         Appellant.
_____


Calendar Date:   September 9, 2015

Before:   Peters, P.J., Lahtinen, Garry and Rose, JJ.

                         _____


        Eric T. Schneiderman, Attorney General, Albany (Laura
Etlinger of counsel), for appellant.

        Law Offices of Bonita E. Zelman, Lake Success (Alexander J.
Wulwick, New York City, of counsel), for respondent.

                         _____


Peters, P.J.

        Appeal from an order of the Court of Claims (Hard, J.),
entered March 31, 2014, which, among other things, partially
granted claimant's cross motion for summary judgment on the issue
of liability.

        This appeal concerns whether defendant's enrollment of
individuals into its organ and tissue donor registry constitutes
a governmental or proprietary function.  We hold that this
activity is a governmental function and that, absent the
assumption of a special duty to claimant, defendant may not be
held liable for its negligent performance of that function.

        On August 5, 2009, claimant's mother, Margaret Lanza,
filled out a driver's license renewal application and submitted

it to the Department of Motor Vehicles (hereinafter DMV).  The application contained a donor consent box in which a person could sign his or her name to indicate that he or she "consent[ed] to the donation of all organs and tissues."  On Lanza's application, a straight line was drawn in the space provided for the signature.[1]  Employees of DMV apparently interpreted the mark as Lanza's consent to be an organ donor and processed her application accordingly.  This information was electronically transferred to the Department of Health (hereinafter DOH), which then enrolled Lanza into defendant's Donate Life Registry (see Public Health Law § 4310 [1]), with an effective date of August 24, 2009.  On the effective date, DOH mailed a letter to Lanza confirming her registration as an organ donor.[2]  Prior to receiving the letter, Lanza died and her organs and tissues were harvested.

Claiming that her mother did not consent to be an organ donor, claimant commenced this action alleging unlawful interference with her common-law right of sepulcher, negligence and negligent and intentional infliction of emotional distress, seeking both compensatory and punitive damages.[3]  Following joinder of issue, defendant moved for summary judgment dismissing the claim on the basis of, among other things, governmental immunity, and claimant cross-moved for partial summary judgment on the issue of liability.  With respect to the issue of

---

[1]  According to claimant, who apparently reviewed the application before it was mailed out, neither she nor Lanza drew the straight line.

[2]  This case apparently prompted DOH to implement a 28-day lag between the time the enrollment letter is sent to an enrollee and the time at which that person becomes active on the Donate Life Registry.

[3]  Although DMV and DOH were named as defendants, the caption was amended to list the State of New York as the only defendant (see Court of Claims Act § 9; Mid-State Indus., Ltd. v State of New York, 117 AD3d 1255, 1255 n 1 [2014]).

governmental immunity, the Court of Claims found that the negligent acts at issue stemmed from defendant's performance of a proprietary function, thereby subjecting it to suit under the ordinary rules of negligence applicable to nongovernmental parties.  The court then dismissed the negligence, negligent and intentional infliction of emotional distress and punitive damages claims on various grounds, but granted claimant summary judgment on the issue of liability on her claim for unlawful interference with her common-law right of sepulcher.  Defendant appeals.

It has long been recognized that a "governmental entity's conduct may fall along a continuum of responsibility to individuals and society deriving from its governmental and proprietary functions" (Miller v State of New York, 62 NY2d 506, 511-512 [1984]; see Matter of World Trade Ctr. Bombing Litig., 17 NY3d 428, 446-447 [2011], cert denied sub nom. Ruiz v Port Auth. of New York & New Jersey, ___ US ___, 133 S Ct 133 [2012]).

> "At one end of the continuum lie purely governmental functions undertaken for the protection and safety of the public pursuant to the general police powers.  In this category, [defendant] remains generally immune from negligence claims, absent a special relationship between the injured party and [defendant].  On the opposite periphery lie proprietary functions in which governmental activities essentially substitute for or supplement traditionally private enterprises. Activities catalogued in the proprietary ledger generally subject [defendant] to the same duty of care as private individuals and institutions engaging in the same activities" (Sebastian v State of New York, 93 NY2d 790, 793 [1999] [internal quotation marks, citations and brackets omitted]; see Wittorf v City of New York, 23 NY3d 473, 478-479 [2014]; Applewhite v Accuhealth, Inc., 21 NY3d

420, 425 [2013]; Metz v State of New York,
20 NY3d 175, 179 [2012]).

Quintessential examples of purely governmental functions include
police and fire protection (see Valdez v City of New York, 18
NY3d 69, 75 [2011]; Harland Enters. v Commander Oil Corp., 64
NY2d 708, 709 [1984]; Bass v City of New York, 38 AD2d 407, 411
[1972], affd 32 NY2d 894 [1973]) and traffic regulation (see
Balsam v Delma Eng'g Corp., 90 NY2d 966, 968 [1997]; Murchison v
New York, 97 AD3d 1014, 1016 [2012]).  On the other hand, a
governmental entity acts in a purely proprietary capacity when it
serves as a landlord by virtue of its ownership and maintenance
of property (see Sebastian v State of New York, 93 NY2d at 793-
794; Miller v State of New York, 62 NY2d at 511-512).  In
determining where along the continuum a governmental entity's
challenged conduct falls, it is necessary to examine "'the
specific act or omission out of which the injury is claimed to
have arisen and the capacity in which that act or failure to act
occurred'" (Miller v State of New York, 62 NY2d at 513, quoting
Weiner v Metropolitan Transp. Auth., 55 NY2d 175, 182 [1982];
accord Wittorf v City of New York, 23 NY3d at 479; Matter of
World Trade Ctr. Bombing Litig., 17 NY3d at 447; Balsam v Delma
Eng'g Corp., 90 NY2d at 967-968).

The allegations of negligence here center on defendant's
role in the establishment and management of the Donate Life
Registry, particularly its act of enrolling individuals as donors
via DMV applications.  The need for government involvement in the
organ and tissue donation process was recognized almost a half-
century ago with the enactment of the Uniform Anatomical Gift Act
(hereinafter UAGA).  Such act was designed to "encourage the
making of anatomical gifts" and to serve the need of several
competing interests including, among others, "the need of society
for bodies, tissues and organs for medical education, research,
therapy and transplantation" (Prefatory Note to Uniform
Anatomical Gift Act of 1968).  Notably, every state, as well as
the District of Columbia, has adopted some variation of the UAGA
(http://www.organdonor.gov/legislation_micro).  With minor
variation, New York codified the UAGA as Public Health Law
article 43 in 1970 (see L 1970, ch 466).  Article 43, among other

things, describes who may be a donor or donee of an anatomical gift (see Public Health Law §§ 4301, 4302), specifies how a gift may be executed or revoked (see Public Health Law §§ 4303-4305) and expressly prohibits the exchange of valuable consideration for any human organ for use in human transplantation (see Public Health Law § 4307).

Over the course of the ensuing 45 years, New York has employed DMV applications as a means of encouraging anatomical donations and facilitating the timely identification of organ and tissue donors. In 1975, the Legislature amended Vehicle and Traffic Law § 504 to permit people to record their anatomical gift wishes on their driver's licenses (see L 1975, ch 315). Supporters noted that "[r]apid and easier identification of anatomical gifts is critical to their usefulness" (Mem in Support, Bill Jacket, L 1975, ch 315). In 2004, the Legislature acted to codify the Donate Life Registry, which had been established by DOH in 2000, into the Public Health Law (see Public Health Law § 4310; Hannon Letter in Support, Bill Jacket, L 2004, ch 454 at 3). The codification of the Donate Life Registry was designed to "advance public health and well-being by encouraging and facilitating . . . organ and tissue donor registry in cooperation with [DMV]" (Leslie Mem in Support, Bill Jacket, L 2004, ch 454 at 10). As ultimately enacted, it provided that a person could register his or her intent to make an anatomical gift via, among other avenues, "the application or renewal form of a license" (L 2004, ch 454, § 1; see Public Health Law § 4310 [2]; [5] [a] [i]). Most recently, in 2012, the Legislature again took steps to increase anatomical donations through DMV license and nondriver identification application and renewal forms, this time mandating the use of specific and conspicuous language in the section of the forms that pertain to the Donate Life Registry and requiring applicants to make an election as to their participation (see Public Health Law § 4310 [5] [b]; Vehicle and Traffic Law §§ 490 [2]; 502 [1]). Given that New York had, at the time, the lowest donor designation rate in the United States, these amendments sought to "create a new model for organ and tissue donation that is aimed at significantly increasing that percentage while taking into consideration all of the individual rights of persons to decline

enrollment into the program" (Mem in Support, Bill Jacket, L 2012, ch 465 at 9).

By establishing the Donate Life Registry and facilitating the identification of organ and tissue donors and the making of anatomical gifts through DMV applications and renewals, defendant is protecting and promoting the health and welfare of the public through the exercise of its general police powers.  It is axiomatic that "'[p]rotecting health and safety is one of municipal government's most important duties'" (Applewhite v Accuhealth, Inc., 21 NY3d at 427, quoting Laratro v City of New York, 8 NY3d 79, 81 [2006]; accord Matter of World Trade Ctr. Bombing Litig., 17 NY3d at 446-447; see Augustine v Town of Brant, 249 NY 198, 204 [1928]; see also Pelaez v Seide, 2 NY3d 186, 203 [2004] [holding that the function of "(p)roviding advice on health and hygiene issues is a governmental activity"]).  The donor registry and enrollment program at issue here is analogous to other public health measures that have been deemed to be governmental functions (see e.g. McLean v City of New York, 12 NY3d 194 [2009] [maintenance of a registry of child care centers]; Pelaez v Seide, 2 NY3d 186 [2004] [lead poisoning prevention and treatment program]; Nehrbas v Incorporated Vil. of Lloyd Harbor, 2 NY2d 190 [1957] [municipal garbage collection]; County of Nassau v South Farmingdale Water Dist., 62 AD2d 380 [1978], affd for reasons stated below 46 NY2d 794 [1978] [supplying of water by a municipal water district for consumption]; City of New Rochelle v State of New York, 19 AD2d 674 [1963], affd 14 NY2d 559 [1964] [maintenance of a sewer and drainage system]).

While the enrollment of organ and tissue donors in New York was, at least prior to 1975, performed largely by private enterprises, "[g]overnmental functions are not to be regarded as nonexistent because they are held in abeyance, or because they lie dormant, for a time.  If they be by their nature governmental, they are none the less so because the use of them has had a recent beginning" (Brush v Commissioner, 300 US 352, 371 [1937]; accord County of Nassau v South Farmingdale Water Dist., 62 AD2d at 391-392).  Indeed, "the legal classification of a particular municipal activity as governmental or proprietary

is, in this transitional age, subject to change with time and circumstance" (Little Joseph Realty v Town of Babylon, 41 NY2d 738, 742 [1977]; see New York Tel. Co. v City of Binghamton, 18 NY2d 152, 159 [1966]; Nehrbas v Incorporated Vil. of Lloyd Harbor, 2 NY2d at 194-195).  As of February 1, 2012 (just prior to the motions for summary judgment at issue here), 95% of those enrolled in the Donate Life Registry were enrolled by DMV through driver's license and nondriver identification card applications and renewals, with another 2% enrolled through other governmental sources such as board of election and DOH enrollments.  The fact that private organizations also enroll a small percentage of organ donors "is not determinative because those [entities] provide supplemental support for a . . . governmental duty rather than vice versa" (Applewhite v Accuhealth, Inc., 21 NY3d at 428; see Nehrbas v Incorporated Vil. of Lloyd Harbor, 2 NY2d at 194-195).  Further, that defendant is particularly well-suited to facilitate and encourage the enrollment of organ donors and has not undertaken the function for profit or revenue favors placing the challenged activity at the governmental end of the continuum (see Matter of Karedes v Colella, 100 NY2d 45, 50 [2003]; Kochanski v City of New York, 76 AD3d 1050, 1052 [2010]).

     For these reasons, we conclude that defendant's enrollment of individuals into the Donate Life Registry constitutes a governmental function.  As such, liability may be imposed for the negligent performance of that function only if defendant owed a special duty to claimant (see Applewhite v Accuhealth, Inc., 21 NY3d at 426; Metz v State of New York, 20 NY3d at 179; Valdez v City of New York, 18 NY3d at 75).  Claimant does not assert the existence of a special duty, and a review of her submissions reveals no facts or allegations that could be construed to demonstrate the existence of such a duty under the circumstances present here (see Lewis v State of New York, 68 AD3d 1513, 1514 [2009]; Bell v Village of Stamford, 51 AD3d 1263, 1264 [2008]). Accordingly, claimant's cause of action for unlawful interference with her common-law right of sepulcher should have been dismissed on the basis of governmental immunity.

     Defendant's remaining arguments have been rendered academic by our determination.

Lahtinen, Garry and Rose, JJ., concur.


ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as denied defendant's motion for summary judgment dismissing the cause of action for unlawful interference with claimant's common-law right of sepulcher and granted claimant's cross motion for partial summary judgment on the issue of liability with respect to said cause of action; motion granted and cross motion denied to that extent; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court