■ MICHAEL J. FEENEY et al., Respondents-Appellants, v COUNTY OF DELAWARE et al., Respondents, and ALAN BEGEAL, Appellant, et al., Defendant. [55 NYS3d 737]—

Peters, P.J. Appeal from an order of the Supreme Court (Burns, J.), entered October 30, 2015 in Delaware County,

which denied defendant Alan Begeal's motion for summary judgment dismissing the complaint against him and granted certain other defendants' motion for summary judgment dismissing the complaint against them.

In July 2011, defendant Christopher Lacey was involved in a violent domestic dispute with his girlfriend. Among the responding law enforcement personnel were defendant Alan Begeal, a state trooper, and deputies from defendant Delaware County Sheriff's Department. Lacey, who had a laceration on his arm, resisted the officers' attempts to take him into custody and was ultimately subdued and transported by ambulance to the Delaware Valley Hospital. While in the ambulance, Lacey was administered a sedative and his hands were handcuffed to the sides of a gurney. Begeal and two deputies followed the ambulance in separate vehicles while another deputy, defendant Timothy Murray, accompanied Lacey in the ambulance.

Upon his arrival at the hospital, Lacey was belligerent and uncooperative. In the emergency room, Lacey was transferred from the gurney to a hospital bed, and his hands were handcuffed to the bed. Once Lacey had calmed down, Begeal and the other officers left the examination room while the physician assistant on duty, plaintiff Michael J. Feeney, began treating Lacey. When Feeney approached Lacey's bed to conduct an examination, Lacey began to pull the monitor patches off his body and, when Feeney attempted to intervene, Lacey allegedly kicked Feeney, knocking him to the ground and causing him to sustain injuries.

Feeney and his wife, derivatively, commenced this negligence action against the Sheriff's Department, defendant County of Delaware, defendant Thomas Mills, the Sheriff of Delaware County, and the three deputies (hereinafter collectively referred to as the County defendants), as well as Begeal and Lacey.[1] Following joinder of issue and discovery,[2] Begeal and the County defendants moved for summary judgment dismissing the complaint on the basis that they owed no special duty to Feeney and, in any event, they were immune from liability because their failure to restrain Lacey's legs and decision to leave him in the examination room with Feeney were discretionary. Supreme Court granted the County defendants' motion, finding that they did not have custody of Lacey at the time of Feeney's injury and, thus, owed no special duty to Feeney. The court, however, denied Begeal's motion, finding

---

1. Plaintiffs sued the state separately in the Court of Claims.

2. Lacey defaulted, and an order declaring him in default was entered on December 9, 2013.

that triable issues of fact existed as to whether Begeal, by his actions, "assumed responsibility for protection of" Feeney. Begeal and plaintiffs now appeal.

Where, as here, a claim arises out of performance of acts undertaken for the protection and safety of the public pursuant to the general police powers, which is a quintessential governmental function (*see Wittorf v City of New York*, 23 NY3d 473, 479 [2014]; *Valdez v City of New York*, 18 NY3d 69, 75 [2011]; *Drever v State of New York*, 134 AD3d 19, 22 [2015]), the governmental actors involved are immune from a negligence claim "unless the injured person establishes a special relationship with the [governmental] entity, which would create a specific duty to protect that individual, and the individual relied on the performance of that duty" (*Miller v State of New York*, 62 NY2d 506, 510 [1984]; *see Applewhite v Accuhealth, Inc.*, 21 NY3d 420, 426 [2013]; *Metz v State of New York*, 20 NY3d 175, 179 [2012]; *Valdez v City of New York*, 18 NY3d at 76-77). Insofar as is relevant here, a special duty arises when the governmental entity "voluntarily assume[s] a duty to the plaintiff beyond what was owed to the public generally" (*Applewhite v Accuhealth, Inc.*, 21 NY3d at 426). To establish the existence of such a duty, four elements establishing a special relationship must be shown: "(1) an assumption by the [governmental entity], through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the [entity]'s agents that inaction could lead to harm; (3) some form of direct contact between the [entity]'s agents and the injured party; and (4) that party's justifiable reliance on the [entity]'s affirmative undertaking" (*Cuffy v City of New York*, 69 NY2d 255, 260 [1987]; *accord Tara N.P. v Western Suffolk Bd. of Coop. Educ. Servs.*, 28 NY3d 709, 714-715 [2017]).

We agree with Supreme Court that the County defendants did not owe any special duty to Feeney because Lacey was not in their custody at the time of his alleged assault on Feeney. In order to voluntarily assume a duty to the plaintiff, beyond that owed to the public at large, there must be some affirmative act by a governmental entity that creates a special relationship with the plaintiff (*see McLean v City of New York*, 12 NY3d 194, 199-201 [2009]). In the context of police protection from secured individuals, such an act is the assumption of physical custody of the subject person (*see generally Sanchez v State of New York*, 99 NY2d 247, 252-253 [2002]; *Baumeister v Town of Cheektowaga*, 34 AD3d 1187, 1188 [2006]).

In support of their motion, the County defendants relied

upon the deposition testimony of Begeal and Murray. Such testimony established that, while en route to the hospital, Begeal learned that the State Police had assumed control over the investigation and, shortly after Lacey's arrival at the hospital, Begeal placed Lacey under arrest and assumed custody over him. Indeed, Begeal and Murray attested that Begeal specifically informed the deputies that Lacey was in the custody of the State Police. The burden, therefore, shifted to plaintiffs to raise a triable issue of fact (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Baumeister v Town of Cheektowaga*, 34 AD3d at 1188), which they failed to do. Although Lacey may have been in the custody of the County defendants while riding in the ambulance, plaintiffs failed to proffer any evidence suggesting that Lacey remained in such custody at the time of his alleged attack on Feeney. Accordingly, Supreme Court properly dismissed the complaint against the County defendants.

With regard to Begeal, even assuming that triable issues of fact exist as to whether he voluntarily assumed a special duty to protect Feeney based on his communications with Feeney and the hospital staff (*see generally DiMeo v Rotterdam Emergency Med. Servs., Inc.*, 110 AD3d 1423, 1424 [2013], *lv denied* 22 NY3d 864 [2014]; *Middleton v Town of Salina*, 108 AD3d 1052, 1054-1055 [2013]), his discretionary acts of not restraining Lacey's legs and leaving the examination room before the attack took place were protected by governmental immunity.[3] The common-law doctrine of governmental immunity "shield[s] public entities from liability for discretionary actions taken during the performance of governmental functions" (*Valdez v City of New York*, 18 NY3d at 76; *accord Turturro v City of New York*, 28 NY3d 469, 479 [2016]; *Esposito v State of New York*, 112 AD3d 1006, 1008 [2013], *lv denied* 23 NY3d 905 [2014]). This doctrine "recognizes that police protection is best left within the discretion of the governmental entity," whose policymakers are the "most expert and qualified to render informed, deliberate decisions on implementing the most reasonable safeguards" (*Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428, 452 [2011], *cert denied sub nom. Ruiz v Port Auth. of New York & New Jersey*, 568 US 817 [2012]). Thus, "when [police] action involves the exercise of discretion, the officer is not liable for the injurious consequences of that action even if resulting from negligence" (*Tango v Tulevech*, 61 NY2d 34, 40 [1983]; *see Donald v State of New*

---

**3.** We note that Supreme Court, in finding questions of fact precluding an award of summary judgment in favor of Begeal, did not address this issue.

*York*, 17 NY3d 389, 395 [2011]; *Davila v City of New York*, 139 AD3d 890, 894 [2016], *lv denied* 28 NY3d 914 [2017]). We are mindful that, to prevail on this defense, a governmental entity "must do much more than merely allege that its employee was engaged in activities involving the exercise of discretion"; rather, the conduct giving rise to the claim must be related to an exercise of that discretion (*Valdez v City of New York*, 18 NY3d at 79; *see Mon v City of New York*, 78 NY2d 309, 313 [1991]; *Trimble v City of Albany*, 144 AD3d 1484, 1487 [2016]).

Turning first to Begeal's decision not to use leg restraints, the State Police field manual submitted by both Begeal and plaintiffs provides that, when prisoners[4] are not being transported to or from jail, the decision to use leg restraints is left to the troopers' discretion based on the consideration of various factors, such as "the gravity of the offense(s), the temperament of the prisoner, the propensity of the prisoner to attempt to escape, and whether or not assistance is immediately available." Although Begeal had access to plastic leg restraints, the undisputed evidence established that, at the time that he left the examination room, Lacey was still handcuffed, was "extremely calm" and had allowed a nurse to remove pieces of glass from his feet without kicking or otherwise resisting the nurse's efforts. Begeal thus made a "reasoned judgment" not to utilize the leg restraints (*Lubecki v City of New York*, 304 AD2d 224, 233 [2003], *lv denied* 2 NY3d 701 [2004]). Accordingly, "[t]he decision to employ [only handcuffs] was a discretionary one . . . , and [Begeal] may not be held liable for that determination" (*Smith v City of New York*, 122 AD3d 133, 134 [1986], *lv denied* 68 NY2d 611 [1986]; *see Davila v City of New York*, 139 AD3d at 894-895; *Montague v City of New York*, 194 AD2d 524, 525 [1993], *lv denied* 82 NY2d 658 [1993]).

Begeal's decision to leave the examination room to permit the medical personnel to examine Lacey in private was likewise discretionary. Although Lacey was combative when he first arrived at the hospital, Begeal did not leave the examination room until approximately 20 minutes after that time and only after ensuring that Lacey had calmed down. Based on these circumstances, Begeal "did not feel that [the hospital personnel and Feeney] were in any immediate danger" and concluded that he could safely leave the room and go to the main area in order to, among other things, wash off Lacey's blood from his clothes. While Begeal's judgment call proved to be incorrect, "it

---

4. For purposes of the manual, the term "prisoner" refers to someone who "is handcuffed and is now in custody," and not necessarily arrested or convicted.

is not for courts to second-guess the wisdom of discretionary governmental choices, troubling though they may sometimes seem in the glaring clarity of hindsight" (*Haddock v City of New York*, 75 NY2d 478, 486 [1990]; *see Valdez v City of New York*, 18 NY3d at 76; *Lauer v City of New York*, 95 NY2d 95, 99 [2000]).

Contrary to plaintiffs' assertion, Begeal does not bear the burden of identifying a "police manual, directive or other policy that would authorize him to leave Lacey alone with the hospital staff." Rather, it is plaintiffs who have the burden of pointing out a specific police manual, directive or other policy that was violated (*see Hephzibah v City of New York*, 124 AD3d 442, 443 [2015], *lv denied* 26 NY3d 903 [2015]; *DiFlorio v Worden*, 303 AD2d 924, 925 [2003]), which they failed to do. Furthermore, Begeal testified that, to his knowledge, aside from instructing that when a felony or high-risk prisoner is injured and is being treated at a medical facility, a second trooper must be present before the restraining devices are removed unless a secure area is used—a situation that is plainly not present here—no other part of the field manual addressed the medical treatment of persons in custody. The absence of such a guideline, in and of itself, suggests that the decision whether to leave the examination room to permit medical staff to examine a detained patient in private is left to police discretion.[5] In view of the foregoing, Supreme Court should have granted Begeal's summary judgment motion on the ground of governmental immunity. The parties' remaining contentions, to the extent not specifically addressed herein, are either without merit or have been rendered academic.

McCarthy, Egan Jr., Mulvey and Aarons, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendant Alan Begeal's motion; motion granted, summary judgment awarded to said defendant and complaint dismissed against him; and, as so modified, affirmed.

---

5. In another section, the manual generally states that a trooper who has custody of a person, whether detained or arrested, is responsible for the proper safeguarding and protection of that person and his or her property.