Joseph v Nyack Hosp. (2020 NY Slip Op 07042)





Joseph v Nyack Hosp.


2020 NY Slip Op 07042


Decided on November 25, 2020


Appellate Division, Second Department


Leventhal, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 25, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
JOHN M. LEVENTHAL
BETSY BARROS
PAUL WOOTEN, JJ.


2018-12024
 (Index No. 30203/18)

[*1]Christopher Joseph, etc., et al., appellants,
v
Nyack Hospital, et al., respondents, et al., defendants.



APPEAL by the plaintiffs, in an action to recover damages for personal injuries, from an order of the Supreme Court (Rolf M. Thorsen, J.), dated September 28, 2018, and entered in Rockland County. The order, insofar as appealed from, denied the plaintiffs' motion for summary judgment on the issue of liability on the fifth and sixth causes of action alleging violation of Social Services Law § 493, and granted that branch of the cross motion of the defendant The Nyack Hospital, The Medical-Dental Staff of Nyack Hospital, Nyack Hospital Foundation, Inc., and Michael Levy which was, in effect, for summary judgment dismissing those causes of action insofar as asserted against them.



Russo & Toner, LLP, New York, NY (Maurice J. Recchia of counsel), for appellants.
Schiavetti, Corgan, DiEdwards, Weinberg & Nicholson, LLP, New York, NY (Samantha Quinn of counsel), for respondents.



LEVENTHAL, J.


OPINION & ORDER
The question presented on this appeal is one of first impression for appellate review, namely, whether there is a private right action for alleged violation of Social Services Law article 11 (Social Services Law § 488 et seq.). We hold that there is not.
Background
The infant plaintiff, by his mother, and his mother, individually, commenced this action to recover damages for personal injuries allegedly sustained by the infant plaintiff, a special needs individual, at a hospital. They asserted eight causes of action. These causes of action alleged assault, battery, false imprisonment, negligent hiring, supervision, and retention, violation of a section of Social Services Law article 11, violation of Civil Rights Law § 79-n, and negligence. The two causes of action alleging violation of Social Services Law article 11 were the fifth and sixth causes of action. In these causes of action, the plaintiffs alleged that the defendants committed physical abuse and deliberate inappropriate use of physical restraints as defined in Social Services Law § 493(4)(b).
The plaintiffs moved for summary judgment on the issue of liability on the fifth and sixth causes of action alleging violation of Social Services Law article 11. The defendants The Nyack Hospital, The Medical-Dental Staff of Nyack Hospital, Inc., Nyack Hospital Foundation, Inc., and Michael Levy (hereinafter collectively the defendants) cross-moved, inter alia, in effect, for summary judgment dismissing the fifth and sixth causes of action alleging violation of Social Services Law article 11 insofar as asserted against them.
In an order dated September 28, 2018, the Supreme Court, among other things, denied [*2]the plaintiff's motion and granted that branch of the defendants' cross motion which was, in effect, for summary judgment dismissing the causes of action alleging violation of Social Services Law article 11 insofar as asserted against them. The Supreme Court concluded, inter alia, that creating such a private right of action would not be consistent with the legislative scheme. The plaintiffs appeal.
Appeal
On this appeal the plaintiffs contend that there is a private right of action for an alleged violation of article 11 of the Social Services Law.
"In the absence of an express private right of action, plaintiffs can seek civil relief in a plenary action based on a violation of the statute 'only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history'" (Cruz v TD Bank, N.A., 22 NY3d 61, 70, quoting Carrier v Salvation Army, 88 NY2d 298, 302; see Sheehy v Big Flats Community Day, 73 NY2d 629, 633). "Stated differently, '[a]bsent explicit legislative direction, . . . it is for the courts to determine, in light of [the statutory] provisions, particularly those relating to sanctions and enforcement, and their legislative history, and of existing common-law and statutory remedies, with which legislative familiarity is presumed, what the [l]egislature intended'" (Haar v Nationwide Mut. Fire Ins. Co., 34 NY3d 224, 228, quoting Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 325).
The Court of Appeals has
"consistently identified three 'essential factors' to be considered in determining whether a private right of action can be fairly implied from the statutory text and legislative history: '(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme'" (Haar v Nationwide Mut. Fire Ins. Co., 34 NY3d at 228-229, quoting Sheehy v Big Flats Community Day, 73 NY2d at 633-634).
"[A]ll three factors must be satisfied before an implied private right of action will be recognized" (Haar v Nationwide Mut. Fire Ins. Co., 34 NY3d at 229).
The third factor has been recognized as the most important
"because 'the Legislature has both the right and the authority to select the methods to be used in effectuating its goals, as well as to choose the goals themselves. Thus, regardless of its consistency with the basic legislative goal, a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme'" (Cruz v TD Bank, N.A., 22 NY3d at 70-71, quoting Sheehy v Big Flats Community Day, 73 NY2d at 634-635; see Uhr v East Greenbush Cent. School Dist., 94 NY2d 32; Eskenazi-McGibney v Connetquot Cent. Sch. Dist., 169 AD3d 8, 11).
The Court of Appeals has "therefore declined to recognize a private right of action in instances where '[t]he Legislature specifically considered and expressly provided for enforcement mechanisms' in the statute itself" (Cruz v TD Bank, N.A., 22 NY3d at 71, quoting Mark G. v Sabol, 93 NY2d 710, 720).
Article 11 of the Social Services Law was enacted as part of the "protection of people with special needs act" (L 2012, ch 501, § 1; see L 2012, ch 501, Part B). The Protection of People with Special Needs Act (hereinafter the Act) amended various state laws, including the executive law, the correction law, the criminal procedure law, the mental hygiene law, the public health law, and the social services law (see L 2012, ch 501). It "enact[ed] into law major components of legislation which are necessary for the protection of persons who are vulnerable because of their reliance on professional caregivers to help them overcome physical, cognitive and other challenges" (L 2012, ch 501, § 2).
The Act included a section setting forth legislative findings and purpose (see L 2012, ch 501, Part A, § 1). That section provided that "[t]here is a recognized need to strengthen and [*3]standardize the safety net for vulnerable persons, adults and children alike, who are receiving care from New York's human service agencies and programs" (id.).
"There are over 270,000 children and adults with disabilities or other life circumstances that make them vulnerable in residential facilities under the auspices of six state agencies that operate, license or certify such programs. In addition, a significant number of persons rely on day programs operated, licensed or certified by the state" (id.).
"Although all of these programs share a common obligation to protect such persons, and keep them safe from abuse and neglect, there are fundamental differences in how the state agencies meet their obligations, as well as major gaps in oversight that may expose vulnerable persons to harm" (id.).
"This legislation creates a set of uniform safeguards, to be implemented by a justice center whose primary focus will be on the protection of vulnerable persons. To bolster the ability of the state to respond more effectively to abuse and neglect of vulnerable persons, without creating additional burdens on local law enforcement, the justice center will have concurrent authority with district attorneys to prosecute abuse and neglect crimes committed against such persons" (id.).
That section further detailed, among other things, that the Justice Center will develop a statewide register containing the names of individuals found responsible for egregious or repeated acts of abuse or neglect, that the Justice Center will develop a code of conduct for workers who have regular contact with vulnerable persons, that the Justice Center will operate a statewide hotline to which certain mandated reports will be required to report abuse, and that the legislation required designation of an independent agency charged with fulfilling the federal protection and advocacy and client assistance programs to provide federal oversight of the state's system of care for individuals with disabilities (see id.). "Accordingly, the purpose of this legislation is to create a durable set of consistent safeguards for all vulnerable persons that will protect them against abuse, neglect and other conduct that may jeopardize their health, safety and welfare, and to provide fair treatment to the employees upon whom they depend" (id.).
The Court of Appeals has explained that "the Protection of People with Special Needs Act was enacted to create a set of uniform safeguards to bolster the protection of people with special needs in New York (L 2012, ch 501, § 2, part A, § 1)" (Matter of Anonymous v Molik, 32 NY3d 30, 34). "To implement those safeguards, the act created the New York State Justice Center for the Protection of People with Special Needs, an agency empowered to receive, investigate, and respond to allegations of abuse, neglect, or other 'reportable incidents' involving disabled residents receiving services in licensed facilities or provider agencies" (Matter of Anonymous v Molik, 32 NY3d at 34).
"Among other things, the Justice Center maintains a statewide central register — the Vulnerable Persons' Central Register — which operates a 24—hour hotline created to field allegations of reportable incidents. Upon receipt of an allegation, the Justice Center must promptly commence an investigation, or it may delegate its investigatory responsibility to an oversight agency or to the facility or provider agency (Social Services Law §§ 488[7], 492[3][c])" (Matter of Anonymous v Molik, 32 NY3d at 34).
According to the Court of Appeals, the Justice Center's intended role was to serve as the "central agency responsible for managing and overseeing the incident reporting system, and for imposing or delegating corrective action (see Social Services Law § 492[3][c]; Executive Law § 553)" (Matter of Anonymous v Molik, 32 NY3d at 40). "As the act and its legislative history make clear, preexisting state systems, which dispersed oversight responsibility among at least six state offices, suffered from 'numerous gaps and inconsistencies' as well as substantial 'variations across state agencies' (Senate Introducer's Mem in Support, Bill Jacket, L 2012, ch 501 at 12, 14, 2012 McKinney's Session Laws of NY at 1970, 1972)" (Matter of Anonymous v Molik, 32 NY3d at 40). "The act sought to reconcile those discrepancies and conform practices across various state agencies by creating the Justice Center —'a new entity that would cut across bureaucratic lines and have as [*4]its primary purpose and responsibility the protection of the health, safety and welfare of vulnerable persons' (Bill Jacket, L 2012, ch 501 at 14-15, 2012 McKinney's Session Laws of NY at 1972)" (Matter of Anonymous v Molik, 32 NY3d at 40-41). "By design, the Justice Center is instilled with the primary authority to 'requir[e] providers to implement corrective action plans to prevent future incidents of abuse and neglect' (Bill Jacket, L 2012, ch 501 at 15, 2012 McKinney's Session Laws of NY at 1972)" (Matter of Anonymous v Molik, 32 NY3d at 41). The Court of Appeals stated that the statute's primary goal was "consolidating broad regulatory compliance authority over abuse and neglect reports in a single state agency: the Justice Center" (id.).
Article 11 of the Social Services Law is entitled, "Protection of People With Special Needs." The article consists of sections addressing definitions (Social Services Law § 488); applicability (Social Services Law § 489); incident management programs (Social Services Law § 490); duty to report incidents (Social Services Law § 491); vulnerable persons' central register (Social Services Law § 492); abuse and neglect findings and consequences (Social Services Law § 493); amendments to and appeals of substantiated reports of abuse or neglect (Social Services Law § 494); register of substantiated category one cases of abuse or neglect (Social Services Law § 495); confidentiality (Social Services Law § 496); and immunity from liability (Social Services Law § 497).
Social Services Law § 493, the specific section of article 11 that the plaintiffs referenced in the complaint, "details the possible findings and consequences in connection with an investigation of abuse or neglect allegations. Following an investigation, a finding must be made, based on a preponderance of the evidence, that the allegation is 'substantiated' or 'unsubstantiated'" (Matter of Anonymous v Molik, 32 NY3d at 34). "While all 'findings' must be reported in the vulnerable persons' central register (Social Services Law § 493[1]), a report 'that is found to be unsubstantiated' must be 'sealed immediately' (Social Services Law § 493[3][d])" (Matter of Anonymous v Molik, 32 NY3d at 35). "The statute also enumerates the various consequences that are triggered in the event of a 'substantiated' report of abuse or neglect. Specifically, subdivision (4) establishes four categories of 'substantiated' reports based on the nature and severity of the offending conduct and/or the facility conditions" (Matter of Anonymous v Molik, 32 NY3d at 35). "Those categorizations, in turn, trigger corresponding consequences, which may include disciplinary action, prevention and remediation requirements, and/or state agency oversight" (id. at 35).
Article 11 sets forth a procedure for amendments to and appeals of reports of abuse or neglect that have been substantiated following investigation. When a report of abuse or neglect is substantiated following investigation, the subject of the report may request amendment of the report and, if that request is denied, may request a hearing to determine whether the report findings should be amended or sealed (see Social Services Law §§ 488[12]; 494[1], [2]; Matter of Taylor v Justice Ctr. for the Protection of People with Special Needs, 182 AD3d 815). At such a hearing, the Justice Center bears the burden of proving by a preponderance of the evidence that the subject committed the act or acts of abuse or neglect (see Social Services Law § 494[1][b]; Matter of Taylor v Justice Ctr. for the Protection of People with Special Needs, 182 AD3d at 817). Ultimately, a Justice Center determination adopting the administrative law judge's decision that the subject committed abuse or neglect is subject to review by way of a proceeding pursuant to CPLR article 78 (see e.g. Matter of Taylor v Justice Ctr. for the Protection of People with Special Needs, 182 AD3d at 817; Matter of O'Grady v Kiyonaga, 172 AD3d 1375). The Justice Center must maintain a register of subjects of reports who have been found to have a substantiated category one case of abuse or neglect where an amendment of the report findings was not timely requested or where, following a hearing, the report findings were not amended to be unsubstantiated (see Social Services Law § 495).
A legislative intent to create a private right of action for alleged violation of article 11 of the Social Services Law is not fairly implied in these statutory provisions and their legislative history. Finding such a private right of action would be inconsistent with the legislative scheme. The Protection of People with Special Needs Act, generally, and article 11 of the Social Services Law, specifically, "already contain[ ] substantial enforcement mechanisms" (Cruz v TD Bank, N.A., 22 NY3d at 71). These mechanisms in the Act include the creation of the Justice Center, the "central agency responsible for managing and overseeing the incident reporting system, and for imposing or delegating corrective action" (Matter of Anonymous v Molik, 32 NY3d at 40). These mechanisms in article 11 include the maintenance of a statewide vulnerable persons' central register to accept, investigate, and respond to allegations of abuse or neglect; the delineation of possible findings and [*5]consequences in connection with an investigation of abuse or neglect allegations, along with procedures for amending and appealing substantiated abuse or neglect reports; and the maintenance of a register of subjects found to have a substantiated category one abuse or neglect case. The substantial enforcement mechanisms "indicat[e] that the legislature considered how best to effectuate its intent and provided the avenues for relief it deemed warranted" (Cruz v TD Bank, N.A., 22 NY3d at 71; cf. Schlessinger v Valspar Corp., 21 NY3d 166 [General Business Law provision relating to termination of service contracts did not create private right of action]; Matter of Stray from the Heart, Inc. v Department of Health & Mental Hygiene of the City of N.Y., 20 NY3d 946 [Animal Shelters and Sterilization Act did not create a private right of action permitting lawsuit by animal rescue organization]; Metz v State of New York, 20 NY3d 175 [Navigation Law provisions concerning inspection of public vessels did not create private right of action in favor of parties killed or injured when tour boat capsized]; City of New York v Smokes-Spirits.Com, Inc., 12 NY3d 616 [public health statute precluding shipment of cigarettes into New York State did not create a private right of action permitting City to sue noncompliant cigarette retailers]; McLean v City of New York, 12 NY3d 194 [Social Services Law provision requiring registration of family day-care homes created no private right of action]; Hammer v American Kennel Club, 1 NY3d 294 [Agriculture and Markets Law statute precluding animal cruelty did not create a private right of action in favor of a dog owner]; Mark G. v Sabol, 93 NY2d 710 [Social Services Law titles 4 and 6 of article 6 did not create private right of action]; Sheehy v Big Flats Community Day, 73 NY2d 629 [Penal Law provision making it a crime for anyone but a parent or guardian to furnish alcoholic beverages to person who was under the legal purchase age did not create a private right of action in favor of such a person who had been injured as a result of her or his own consumption of alcohol]; Konkur v Utica Academy of Science Charter Sch., 181 AD3d 1271, lv granted ___ NY3d___, 2020 NY Slip Op 73035 [2020] [Labor Law section prohibiting "kick-back" of wages did not create a private right of action]; Eskenazi-McGibney v Connetquot Cent. Sch. Dist., 169 AD3d 8 [Dignity for All Students Act did not create a private right of action in favor of a student injured by a school's failure to enforce its policies prohibiting discrimination and harassment]; T.T. v State, 151 AD3d 1345 [Mental Hygiene Law former § 13.09(c)—which charged the Office of Mental Retardation and Developmental Disabilities with ensuring that the care and treatment provided to persons with developmental disabilities were of high quality and that the personal and civil rights of persons receiving such care and treatment were protected—and relevant regulations did not create a private right of action]). Since creating a private right of action for alleged violation of article 11 would be inconsistent with the legislative scheme, a private right of action for alleged violation of that article may not be fairly implied regardless of whether the plaintiffs are of the class for whose particular benefit the statute was enacted, and regardless of whether recognition of a private right of action would promote the legislative purpose. We hold that there is not a private right action for alleged violation of article 11 of the Social Services Law.
In urging us to reach the opposite conclusion, the plaintiffs point to two instances where article 11, despite limiting disclosure of reports made pursuant to that article, provides that
"the service recipient, and such service recipient's parent, guardian or other person legally responsible for such service recipient may disclose information and reports made available pursuant to this paragraph to an attorney, who shall not further disclose except as is necessary for use by such attorney in rendering advice, assistance and representation" (Social Services Law §§ 496[1][g], [2][b]).
They also point to a provision allowing disclosure to a court in certain circumstances (see Social Services Law § 496[2][f]). However, in view of the substantial enforcement mechanisms contained in the Protection of People with Special Needs Act, generally, and article 11 of the Social Services Law, specifically, the disclosure specified in these provisions fails to convince us that the legislature intended there to be a private right of action for alleged violation of article 11 despite the legislature's failure to explicitly provide one. Moreover, the plaintiffs do not dispute that other forms of civil relief, such as tort causes of action like the ones they asserted in this action, are available to compensate for the injuries that the infant plaintiff allegedly sustained.
Accordingly, because there is not a private right action for alleged violation of article 11 of the Social Services Law, we agree with the Supreme Court's determinations to deny the plaintiffs' motion for summary judgment on the issue of liability on the fifth and sixth causes of [*6]action alleging violation of Social Services Law § 493, and to grant that branch of the defendants' cross motion which was, in effect, for summary judgment dismissing those causes of action insofar as asserted against them.
We need not address the defendants' remaining contention in light of our determination.
BALKIN, J.P., BARROS and WOOTEN, JJ., concur.
ORDERED that order is affirmed insofar as appealed from, with costs.
ENTER:
Aprilanne Agostino
Clerk of the Court