■ T.T., as Guardian of the Person and Property of R.R., a Developmentally Disabled Person, Appellant, v STATE OF NEW YORK, Respondent. [58 NYS3d 187]—

Clark, J. Appeal from an order of the Court of Claims (DeBow, J.), entered November 30, 2015, which, among other things, granted defendant's cross motion for summary judgment dismissing the claim.

From March 1986 through June 1993, R.R. (hereinafter the resident), a developmentally disabled woman with moderate to severe autism, resided in a facility owned and operated by Camary Statewide Services, a private, nonprofit corporation that was, at that time, certified by the Office of Mental Retardation and Developmental Disabilities (hereinafter OMRDD)[1] to provide care and treatment to persons with developmental disabilities. During this four-year period, claimant, the resident's mother and legal guardian, regularly observed abrasions, bruises, bite marks and other injuries to the resident's body, including her rectum, and brought such injuries to the attention of the staff at Camary, as well as OMRDD and the State Commission on Quality Care for the Mentally Disabled (hereinafter the Commission).[2]

In 2002, claimant commenced this negligence action against defendant for its alleged failure to adequately regulate and oversee the care and treatment provided by Camary to the resident, conduct a sufficient investigation into claimant's reports of the suspected abuse of the resident and take appropriate corrective measures, as well as its alleged implementation of an internal policy that discouraged the reporting of incidents of resident-to-resident abuse. In 2015, following years of discovery, claimant moved for summary judgment on the issue of liability, and defendant cross-moved for summary judgment dismissing the claim. The Court of Claims denied claimant's motion for summary judgment, but granted defendant's cross motion and dismissed the claim. Claimant now appeals, and we affirm.

In determining whether claimant may assert a negligence claim against defendant, we must first assess whether defend-

---

1. In July 2010, OMRDD became known as the Office for People with Developmental Disabilities (see L 2010, ch 168, § 2).

2. In 2012, the Commission was replaced by the Justice Center for the Protection of People with Special Needs (see Executive Law § 551, as added by L 2012, ch 501, § 2, part A, § 3).

ant "was engaged in a proprietary function or acted in a governmental capacity at the time [that] the claim arose" (*Applewhite v Accuhealth, Inc.*, 21 NY3d 420, 425 [2013]; *see Turturro v City of New York*, 28 NY3d 469, 478 [2016]; *McEnaney v State of New York*, 267 AD2d 748, 749 [1999]). If defendant was engaged in a proprietary function—that is, activities that "essentially substitute for or supplement 'traditionally private enterprises' "—it is subject to suit under ordinary negligence principles applicable to nongovernmental actors (*Sebastian v State of New York*, 93 NY2d 790, 793 [1999], quoting *Riss v City of New York*, 22 NY2d 579, 581 [1968]; *see Drever v State of New York*, 134 AD3d 19, 22 [2015]). However, if defendant's actions were " 'undertaken for the protection and safety of the public pursuant to the general police powers,' " they are deemed governmental and defendant may be subject to suit only if it owed a special duty to the resident and if the governmental function immunity defense does not apply (*Applewhite v Accuhealth, Inc.*, 21 NY3d at 425-426, quoting *Sebastian v State of New York*, 93 NY2d at 793; *accord Turturro v City of New York*, 28 NY3d at 478-479; *see Metz v State of New York*, 20 NY3d 175, 179 [2012]).

At their core, claimant's negligence claims focus on the manner in which defendant oversaw the care and treatment that Camary provided to the resident and the adequacy of its enforcement of regulatory provisions requiring that Camary report to OMRDD injuries sustained by its residents. While the provision of psychiatric care by a governmental actor has been held to be proprietary in nature (*see Schrempf v State of New York*, 66 NY2d 289, 294 [1985]), the care and treatment at issue here was provided by a private corporation, whose operation was certified and regulated by OMRDD (*see* Mental Hygiene Law §§ 16.03, 16.11). Indeed, the record established that, pursuant to its power to investigate the operation of service providers (*see* Mental Hygiene Law former § 16.11 [2] [b], as added by L 1983, ch 786, § 1), OMRDD conducted annual or biannual reviews, which included a sampling of records and interviews of staff members and residents, to determine whether Camary continued to be eligible for an operating certificate to provide care and treatment to developmentally disabled individuals (*see* 14 NYCRR former 633.2). Where noncompliance was discovered, OMRDD could require private service providers to take corrective measures to address the deficiency or, where the noncompliance was severe, revoke, suspend or limit the service provider's operating certificate (*see* Mental Hygiene Law former § 16.17 [a], as amended by L 1985, ch 856, § 4; L 1990, ch 618, §§ 6, 7). In the event of noncompli-

ance, OMRDD would provide guidance to the service provider, but it would not take affirmative steps to bring the provider into compliance with the applicable regulations. Moreover, OMRDD's oversight over, and regulation of, Camary was plainly undertaken to further the general goal of protecting the health and safety of persons with developmental disabilities. Based on the foregoing, we conclude that the actions, or inactions, in question were governmental in nature (*see Metz v State of New York*, 20 NY3d at 179; *Scruggs-Leftwich v Rivercross Tenants' Corp.*, 70 NY2d 849, 851-852 [1987]; *Worth Distribs. v Latham*, 59 NY2d 231, 237 [1983]; *O'Connor v City of New York*, 58 NY2d 184, 190 [1983]).

Having determined that defendant acted in a governmental capacity at the time that the claim arose, we must proceed to the question of whether defendant owed the resident a special duty, which arises out of a special relationship between an injured party and the governmental entity (*see Valdez v City of New York*, 18 NY3d 69, 75 [2011]; *McLean v City of New York*, 12 NY3d 194, 199 [2009]; *Pelaez v Seide*, 2 NY3d 186, 198-199 [2004]). "A special relationship can be formed in three ways: (1) when the [governmental entity] violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the [governmental entity] assumes positive direction and control in the face of a known, blatant and dangerous safety violation" (*Pelaez v Seide*, 2 NY3d at 199-200; *accord Coleson v City of New York*, 24 NY3d 476, 481 [2014]; *McLean v City of New York*, 12 NY3d at 199). Here, of the three ways in which claimant can establish that defendant owed the resident a special duty, only the first is in issue.[3] To that end, "[t]o form a special relationship through breach of a statutory duty, the governing statute must authorize a private right of action" (*Pelaez v Seide*, 2 NY3d at 200; *accord McLean v City of New York*, 12 NY3d at 200). Where a private right of action is not expressly created by the statute, one "may be fairly implied when (1) the [injured party] is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the governing statute; and (3) to do so would be consistent

---

**3.** Claimant argues on appeal that a special relationship was also created under the second prong. However, as claimant concedes, she did not advance this argument in the Court of Claims. As such, it is unpreserved for our review (*see Malta Props. 1, LLC v Town of Malta*, 143 AD3d 1142, 1144 n [2016]; *Tougher Indus., Inc. v Dormitory Auth. of the State of N.Y.*, 130 AD3d 1393, 1396 n 2 [2015]).

with the legislative scheme" (*Pelaez v Seide*, 2 NY3d at 200; *see Sheehy v Big Flats Community Day*, 73 NY2d 629, 633-634 [1989]).

Here, claimant argues that the requisite special relationship was formed by OMRDD's violation of Mental Hygiene Law former § 13.07 (c) (*see* L 1977, ch 978, § 11), as well as the reporting rules in 14 NYCRR former part 624.[4] As relevant here, Mental Hygiene Law former § 13.07 (c) (*see* L 1977, ch 978, § 11) charged OMRDD with ensuring that the care and treatment provided to persons with developmental disabilities were of high quality and that the personal and civil rights of persons receiving such care and treatment were protected. As for the reporting rules, OMRDD promulgated detailed regulations requiring that reportable incidents, which included instances in which a resident sustained an injury requiring more than first aid, be recorded and investigated by the service provider under a defined procedure, subject to review by OMRDD. Undoubtedly, these statutory and regulatory provisions were enacted for the benefit of persons with developmental disabilities, a class within which the resident certainly falls.

However, no private right of action is expressly created by the implementing statute and the relevant regulations and, contrary to claimant's contentions, one may not be fairly implied. During the time period relevant to this action, in the absence of an express private right of action, the Legislature did not leave residents or their legal guardians without recourse to address those perceived instances in which OMRDD did not adequately discharge its duty to protect the personal and civil rights of residents. Indeed, the Legislature created the Commission, which was responsible for, among other things, reviewing and investigating complaints of patient abuse and mistreatment and, where necessary, recommending to OMRDD that preventative and remedial actions be taken (*see* Mental Hygiene Law former § 45.07 [c] [1], [3]).[5] Given the detailed statutory scheme of which Mental Hygiene Law former § 13.07 (c) (*see* L 1977, ch 978, § 11) was a part and the

---

4. In her claim, claimant asserted that the Commission was negligent in investigating her complaints of abuse and mistreatment. However, in her appellate brief, claimant failed to address the manner in which a special relationship existed between the resident and the Commission. Accordingly, claimant's appeal related thereto is deemed abandoned (*see NYAHSA Servs., Inc., Self-Ins. Trust v People Care Inc.*, 141 AD3d 785, 787 n 4 [2016]; *Hamelin v Town of Chateaugay*, 100 AD3d 1330, 1331 n [2012]).

5. Additionally, under applicable regulatory provisions, OMRDD established a method for residents or their legal guardians to object to and appeal any portion of a service plan and, where unsatisfied with the result

creation of a means by which residents or legal guardians could seek the Commission's independent review of the actions or inactions of OMRDD, "[i]t is fair to infer that the Legislature considered carefully the best means for enforcing the [statutory duties bestowed upon OMRDD], and would have created a private right of action against [OMRDD] if it found it wise to do so" (*McLean v City of New York*, 12 NY3d at 200-201). Moreover, a review of the relevant legislative history (*see* L 1977, ch 978; L 1972, ch 251) reveals no support for the conclusion that the recognition of a private right of action would further the legislative purpose of Mental Hygiene Law former § 13.07 (c) (*see* L 1977, ch 978, § 11) or that implying such a private right of action would be consistent with the legislative scheme (*see McWilliams v Catholic Diocese of Rochester*, 145 AD2d 904, 905 [1988]; *see generally Justice v State of New York*, 116 AD3d 1196, 1198 [2014], *lv denied* 23 NY3d 905 [2014]). Accordingly, as claimant failed to demonstrate that defendant owed the resident a special duty, tort liability may not be attributed to defendant for the alleged failures of OMRDD in its governmental capacity (*see O'Connor v City of New York*, 58 NY2d at 192). As such, the Court of Claims properly granted defendant's cross motion for summary judgment dismissing the claim.

McCarthy, J.P., Lynch and Devine, JJ., concur. Ordered that the order is affirmed, without costs.

upon the exhaustion of all administrative remedies, seek relief by way of a CPLR article 78 proceeding (*see* 14 NYCRR former 633.12).