Matter of Community, Work, & Independence, Inc. v New York State Off. for People with Dev. Disabilities (2020 NY Slip Op 02301)





Matter of Community, Work, & Independence, Inc. v New York State Off. for People with Dev. Disabilities


2020 NY Slip Op 02301


Decided on April 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 16, 2020

528297

[*1]In the Matter of Community, Work, and Independence, Inc., Petitioner,
v
New York State Office for People with Developmental Disabilities et al., Respondents.

Calendar Date: February 14, 2020

Before: Garry, P.J., Egan Jr., Mulvey, Aarons and Colangelo, JJ.


Bartlett, Pontiff, Stewart & Rhodes, PC, Glens Falls (John D. Wright of counsel), for petitioner.
Letitia James, Attorney General, Albany (Patrick A. Woods of counsel), for New York State Office for People with Developmental Disabilities and another, respondents.
Mental Hygiene Legal Service, Albany (Brent R. Stack of counsel), for M.D., respondent.



Mulvey, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Warren County) to review a determination of respondent Commissioner of the Office for People with Developmental Disabilities sustaining an objection to petitioner's proposed discharge of respondent M.D.
Respondent M.D. is a young man with a mild to moderate intellectual disability, is on the autism spectrum and exhibits signs and symptoms of obsessive compulsive disorder that are linked to his autism. Since June 2014, M.D. has resided in a state-run home operated by respondent Office for People with Developmental Disabilities (hereinafter OPWDD). At the same time that he moved to that residence, M.D. began receiving day habilitation services, funded through OPWDD's Home and Community Based Services (hereinafter HCBS) Medicaid waiver program, at a facility operated by petitioner. In May 2016, petitioner notified M.D.'s parents, who are his legal guardians, that it would discontinue such services and discharge M.D. from its program the following month "due to [petitioner's] inability to provide appropriate levels of support and services at the funding level authorized by OPWDD." Thereafter, M.D.'s parents filed a formal written objection to petitioner's proposed discharge and requested an administrative hearing (see 14 NYCRR 633.12 [a] [8] [i] [c]).
Following a hearing, the Hearing Officer sustained the objection, finding that petitioner's proposed discharge was not reasonable under the circumstances. Petitioner appealed the Hearing Officer's determination to respondent Commissioner of OPWDD, who affirmed. To review the Commissioner's determination, petitioner commenced this CPLR article 78 proceeding, which Supreme Court transferred to this Court (see CPLR 7804 [g]).
Initially, we reject petitioner's argument that the Hearing Officer improperly placed the burden of proof on petitioner, rather than on M.D. The burden of proof at an administrative hearing generally rests "on the party who initiated the proceeding" (State Administrative Procedure Act § 306 [1]). We view petitioner's discharge letter as the equivalent of a document that initiated the administrative proceeding and the objection by M.D.'s parents as equivalent to an answer requiring the other party to come forward with its evidence at a hearing (see Connerton v Ryan, 28 Misc 3d 407, 415-416 [Sup Ct, Broome County 2010], revd on other grounds 86 AD3d 698 [2011]). Moreover, logic dictates that when a service provider seeks to discharge an individual from HCBS waiver services, the burden should be borne by the provider rather than the individual with developmental disabilities. Thus, the burden was properly placed on petitioner.
"When an agency renders a determination following a hearing held pursuant to law, this Court will not disturb the determination as long as it is supported by substantial evidence" (Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn. of the State of N.Y., 169 AD3d 1334, 1334-1335 [2019] [citations omitted], appeal dismissed and lv denied 33 NY3d 1053 [2019]; see Matter of Watson v New York State Justice Ctr. for the Protection of People with Special Needs, 152 AD3d 1025, 1026 [2017]). "Quite often there is substantial evidence on both sides of an issue disputed before an administrative agency, and the substantial evidence test demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Marine Holdings, LLC v New York City Commn. on Human Rights, 31 NY3d 1045, 1047 [2018] [internal quotation marks and citations omitted]). "Under this standard, it is the responsibility of the administrative agency to weigh the evidence and choose from among competing inferences therefrom and, so long as the inference drawn and the ultimate determination made are supported by substantial evidence, it is not for the court to substitute its judgment for that of the administrative agency" (Matter of Preece v New York State Justice Ctr. for the Protection of People with Special Needs, 176 AD3d 1365, 1367 [2019] [internal quotation marks and citations omitted]; see Matter of Perez v New York State Justice Ctr. for the Protection of People with Special Needs, 170 AD3d 1290, 1291 [2019], lv denied 34 NY3d 903 [2019]).
As relevant here, the parents of a person receiving HCBS waiver services may initiate an objection to an agency's proposal to discharge the person from its program (see 14 NYCRR 633.12 [a] [2] [iv]; [4]). Agencies providing HCBS waiver services must develop policies and procedures to establish mechanisms, including administrative hearings, to resolve objections to proposals to discontinue services (see 14 NYCRR 633.12 [a] [1], [2] [iv]; [8] [i] [c]; see also T.T. v State of New York, 151 AD3d 1345, 1348 n 5 [2017]). At an objecting party's request, a hearing must take place before a hearing officer (see 14 NYCRR 633.12 [a] [8] [i] [c]). Pursuant to OPWDD Policy and Procedures, Topic No. CP-10 (Rev [Feb. 1995]), the hearing officer must "[d]etermine[], from everything submitted by the parties at the hearing, if the objection is sustainable. In making this determination, [the hearing officer must] consider[], among other things, the person's program and service needs; whether services and programs currently received by the person meet those needs; whether other programs and services, more appropriate to meet the person's needs, are available within existing resources; and the efforts by staff to plan for and implement the provision of more appropriate programs and services within the current location and/or elsewhere" (OPWDD Policy and Procedures, Topic No. CP-10 [Rev (Feb. 1995)], at 4, ¶ 9). An objection must be sustained "if, after weighing the above factors and any other relevant considerations advanced by the parties, [the hearing officer] finds that the . . . proposal[] to discharge[] [is] not reasonable under the circumstances" (OPWDD Policy and Procedures, Topic No. CP-10 [Rev (Feb. 1995)], at 4, ¶ 10).
The Hearing Officer heard testimony from 11 witnesses and admitted numerous exhibits. The parties appeared to agree on M.D.'s program and service needs, and that the services he was receiving from petitioner met those needs. M.D.'s Medicaid service coordinator testified regarding her own efforts, and those of other people, to locate and investigate other available programs. Some programs were too far away, one could not provide or arrange for transportation from M.D.'s residence, and others had no openings or lacked a program that could address M.D.'s special needs. As for the state-run Adirondack day habilitation program — which was suggested by petitioner as a viable alternative — M.D.'s father testified that it did not have nearly enough social stimulation for M.D. and the individuals in that program were more cognitively impaired and physically and emotionally fragile than M.D. The service coordinator agreed, indicating that M.D. would not receive adequate services there, and he might create a risk of injury to the frailer individuals already in that program. M.D.'s father testified that M.D. was doing excellent in petitioner's program, including doing well socially with staff and peers, and that he did not see any program in the area that could serve M.D. better. The record contains no proof that any other available program was appropriate to meet M.D.'s needs, let alone "more appropriate" than petitioner's program (OPWDD Policy and Procedures, Topic No. CP-10 [Rev (Feb. 1995)], at 4, ¶ 9). Based on the factors enumerated in OPWDD Policy and Procedures, Topic No. CP-10 (Rev [Feb. 1995]), discharging M.D. from petitioner's program would not be reasonable under the circumstances.
Indeed, petitioner does not assert that its program was inappropriate for M.D. or that he was not benefitting from its services. Petitioner acknowledges that it provided an excellent program for M.D. but seeks to discharge him based on its own financial concerns. Specifically, petitioner contends that, although it was aware of M.D.'s behavioral concerns before he began in petitioner's program, petitioner anticipated that there would be an initial transition period where more staff and resources would be necessary to provide services to M.D. but that his troublesome behaviors would taper off after this transition period, permitting a decrease in staffing. However, this tapering off did not occur as expected, requiring petitioner to maintain a higher — and, therefore, more expensive — level of staffing and resources. Additionally, M.D. has injured staff, contributing, in part, to a large increase in petitioner's workers' compensation premiums. Further, petitioner argues that it was subjected to increased costs due to OPWDD's actions, namely, failure of the staff at M.D.'s state-run residence to properly communicate with petitioner or agree on a cohesive approach to dealing with M.D. As to those arguments, record evidence indicates that, after numerous meetings addressing these topics, the communication had improved and some of petitioner's suggestions had been implemented at the residence, although the staff of the different facilities continued to have somewhat different ideas regarding the necessary level of structure that M.D. required in various settings.
Even if the catch-all of "any other relevant considerations advanced by the parties" (OPWDD Policy and Procedures, Topic No. CP-10 [Rev (Feb. 1995)], at 4, ¶ 10) includes a provider agency's financial difficulties connected to the provision of services to an individual, the Hearing Officer noted that petitioner "may well have valid fiscal concerns," but concluded that it would not be proper or in M.D.'s best interest to discharge him on the basis of a lack of funding. We acknowledge the conundrum raised by petitioner — that providers face a difficulty in providing excellent services to a population with special needs but with no avenue of relief to help them financially when those services are more expensive than expected or than the maximum allowed under the HCBS waiver program. While we applaud providers such as petitioner for striving to provide excellent services to an underserved population, and are cognizant of their frustration when they deem the funding available for such services to be inadequate, the remedy must be for the service providers to apply to or lobby the relevant agencies, the Legislature or the Governor to provide more funding; the answer cannot be that administrative agencies or courts should allow service providers to simply discharge individuals with developmental disabilities from their services whenever the providers deem them too expensive. Based on consideration of the relevant factors, substantial evidence supports the Commissioner's determination that it was not reasonable to allow petitioner to discharge M.D. from its program.
Garry, P.J., Egan Jr., Aarons and Colangelo, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.