**A.J. v State of New York**

2022 NY Slip Op 34780(U)

May 24, 2022

Court of Claims

Docket Number: Claim No. 136758

Judge: Catherine E. Leahy-Scott

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

**STATE OF NEW YORK          COURT OF CLAIMS**

A.J.,

                                        **Claimant,**          **DECISION AND ORDER**

                    -v-

**STATE OF NEW YORK,**                              Claim No.        136758
                                                                      Motion No.     M-97759

                                        **Defendant.**

_____

**BEFORE:**          **HON. CATHERINE E. LEAHY-SCOTT**
                    **Judge of the Court of Claims**


**APPEARANCES:**     **For Claimant:**
                    **Herman Law**
                    **By: Sara A. Coletti, Esq.**


                    **For Defendant:**
                    **Letitia James, New York State Attorney General**
                    **By: Thomas J. Reilly, Esq., Assistant Attorney General**

_____

On August 6, 2021, Claimant A.J.[1] filed this Claim pursuant to the Child Victims Act to recover damages for alleged sexual misconduct perpetrated at a Northeast Parent and Child Society, Inc. (Northeast) residential facility in Schenectady, New York (see Affirmation of Thomas J. Reilly, Esq., Assistant Attorney General [Reilly Aff], Ex A [Claim] ¶ 1). The Claim describes Northeast as "a not-for-profit corporation providing foster care placement and residential care placement of children in their residential care facilities" (id. ¶ 4). Issue was joined on September 8, 2021 (see id.

---

[1] By Decision and Order dated January 28, 2022 and entered February 16, 2022, this Court denied Claimant's motion seeking to prosecute this Claim utilizing a pseudonym, but permitted Claimant to maintain the above anonymous caption pending Decision and Order on the instant motion to dismiss (see A.J. v State of New York, UID No. 2022-058-026 [Ct Cl, Leahy-Scott, J., Jan. 28, 2022]).

[* 1]

Ex B [Verified Answer]), and a preliminary conference was conducted on October 19, 2021 to set a schedule for the completion of discovery.

The Claim alleges that, "[i]n or about 1993, when he was approximately eleven (11) years old, Claimant was placed by [the Division for Youth] at [a Northeast] facility . . . for residential juvenile detention and/or supervision" (Claim ¶ 29). Claimant resided at the facility for one year (see id. ¶ 7). Claimant asserts "[s]hortly after [he]was placed at the facility, when he was approximately eleven (11) years old," he was sexually abused by Cora Schroeter, an alleged employee at Northeast (id. ¶ 31; see id. ¶ 8). Specifically, the Claim alleges Claimant was sexually abused by Schroeter "on multiple occasions in approximately 1993 to 1994 when Claimant was approximately eleven (11) to twelve (12) years old" and that said abuse occurred "in a 'restraining room' and in a bathroom on facility premises" (id. ¶¶ 33-34).

Claimant purports to set forth a Claim of negligence against the State of New York based upon the alleged sexual assault committed by Schroeter. In particular, Claimant contends that the State, and more specifically, the Division for Youth, "was responsible for oversight and monitoring of juvenile detention centers to ensure compliance with applicable New York Law" (id. ¶ 14). Claimant posits the State breached, among other duties, the duty "[t]o investigate all relevant conditions of the juvenile detention centers that might affect the child" and "[t]o report and investigate all known incidents of sexual abuse or aggression occurring in the juvenile detention center" (id. ¶ 26 [b], [d]).

Defendant now moves to dismiss the Claim for lack of subject matter jurisdiction on the ground the Claim fails to satisfy the pleading requirements of Court of Claims Act § 11 (b). In particular, Defendant argues, among other things, that the Claim fails to specify the date(s) of the

alleged sexual abuse (see Reilly Aff ¶¶ 2, 6-16). Additionally, Defendant asserts that Claimant failed to plead facts evincing a special duty owed to Claimant by the State (see id. ¶ 20).

Claimant contends that a claim brought pursuant to the Child Victims Act revival statute need not allege a precise date when the claim arose (see Claimant's Memo of Law at 3-13). Claimant appears to suggest that the substantive, jurisdictional pleading requirements of Court of Claims Act § 11 (b) do not apply to claims brought under the Child Victims Act (see id.). Claimant contends that by enacting Court of Claims Act § 10 (10) and removing the time limitations for claims brought pursuant to the Child Victims Act, the Legislature intended to relax the substantive pleading requirements set forth in Court of Claims Act (see id. at 8-10). Indeed, Claimant goes so far as to state that "the question of *when* a claim filed under the [Child Victims Act] arose is now jurisdictionally irrelevant" (id. at 12). In support of this argument, Claimant relies on legislative history surrounding the enactment of the Child Victims Act (see Affirmation of Sara A. Coletti, Esq. [Coletti Aff] Exs B-E). Claimant also asserts that the Claim alleges sufficient facts demonstrating the State owed Claimant a special duty (Claimant's Memo of Law, at 22-25). As the Court of Claims Act § 11 (b) pleading issue implicates this Court's jurisdiction, it must be addressed first.

**Pleading Requirements of Court of Claims Act § 11 (b)**

"The State's waiver of immunity from suits for money damages is not absolute, but rather is contingent upon a claimant's compliance with specific conditions placed on the waiver by the Legislature" (Lepkowski v State of New York, 1 NY3d 201, 206 [2003]; see Court of Claims Act § 8; Alston v State of New York, 97 NY2d 159, 163 [2001]). Specifically, the State's waiver of immunity "'is conditioned upon a claimant's compliance with the limitations set forth in article 2 of the Court of Claims Act, which includes section 11 (b)'" (Moreland v State of New York, 200

A3d 1362, 1363-1364 [3d Dept 2021], quoting Weaver v State of New York, 82 AD3d 878, 879 [2d Dept 2011], lv dismissed 17 NY3d 778 [2011], lv denied 19 NY3d 804 [2012]). Moreover, "[b]ecause suits against the State are allowed only by the State's waiver of sovereign immunity and in derogation of the common law, statutory requirements conditioning suit must be strictly construed" (Matter of New York City Asbestos Litig., 24 NY3d 275, 281 [2014] [internal quotation marks and citations omitted]). "Although it may be difficult to comply with the terms of [Court of Claims Act § 11 (b)], it is for the Legislature to set and modify those terms, not this Court" (Moreland, 200 AD3d at 1364).

In 2019, the Legislature amended Court of Claims Act § 10 to specify that the time limitations contained therein did not apply to claims brought pursuant to the Child Victims Act revival statute (see L 2019, ch 11, § 7 [codifying Court of Claims Act § 10 (10)]). Any claims brought pursuant to the Child Victims Act are governed by the time limitations set forth in CPLR 214-g. Notably, however, the Legislature did not amend the substantive pleading requirements in Court of Claims Act § 11 (b) as it relates to Child Victims Act claims brought in this Court (see generally L 2019, ch 11; L 2020, ch 130). Thus, the Court concludes that the plain language of the Child Victims Act is unambiguous in that it did not amend the pleading requirements of Court of Claims Act § 11 (b).

The legislative history relied upon by Claimant does not evince a contrary intent as it relates to Court of Claims Act § 11 (b) (see People v Badji, 36 NY3d 393, 399 [2021] ["the legislative history of an enactment may also be relevant and is not to be ignored, even if words be clear" (internal quotation marks and citation omitted)]). Specifically, Claimant relies upon, among other things, the Sponsor's Memorandum of the initial legislative bill enacting the Child Victims Act, a

[* 4]

statement made by New York State Assembly Speaker Carl E. Heastie regarding the passage of the Child Victims Act, and the Governor's Executive Budget Memo for the 2020 Fiscal Year. In particular, the Sponsor's Memorandum states the Child Victims Act will

> "[r]emove notice of claim requirements in actions alleging damages resulting from the commission of certain sexual offenses against governmental entities, thus putting governmental and non-governmental defendants on an equal footing for any civil actions brought after the effective date of this act, including during the one year revival window. Current law, which requires that a notice of claim must first be served prior to commencing such actions, would not apply to these types of actions."

(Sponsor's Mem at 2 [reproduced at Coletti Aff, Ex B at 2]). Similarly, Speaker Heastie stated the Child Victims Act "would treat public and private entities equally by removing the current notice of claim provisions for public entities, and further clarify that public and private entities are subject to the look-back window" (News Release of Assembly Speaker Carl E. Heastie [reproduced at Coletti Aff, Ex C]). The Governor's Executive Budget Memo stated

> "there are needless statutory hurdles that make it difficult for these victims to bring lawsuits against those entities that have harbored these abusers. By eliminating the need to file a notice of claim in these child sex abuse cases, this bill removes those hurdles and ensures that these victims are not denied their day in court"

(FY 2020 New York State Executive Budget Public Protection & General Government Article VII Legislation, at 31 [reproduced at Coletti Aff, Ex E at 3]).

None of these statements demonstrate an intention to amend and/or abrogate the substantive, jurisdictional pleading requirements set forth in Court of Claims Act § 11 (b) for Child Victims Act claims brought in the Court of Claims. Rather, these statements demonstrate the legislature's intent of removing the time restrictions and/or notice of claim requirements before commencing a claim against a governmental entity. Stated differently, these statements merely clarify that to commence an action pursuant to the Child Victims Act, an aggrieved party must simply file the lawsuit against

[* 5]

the defendant within the revival window regardless of whether the defendant is a governmental entity or a private party. This reading is consistent with Court of Claims Act § 10 (10) which removes the time limitations for claims and notices of intention to file claims brought pursuant to the Child Victims Act.

In sum, the plain language of the Child Victims Act and the legislative history relied upon by Claimant do not support Claimant's contention that the strict pleading requirements of Court of Claims Act § 11 (b) do not apply to claims commenced pursuant to the Child Victims Act. Indeed, had the Legislature intended to amend or abrogate section 11 (b) as it relates to claims brought pursuant to the Child Victims Act, or specify that such claims should be treated differently than other claims brought before this Court it could have easily done so (see generally Court of Claims Act § 8-b [setting forth specific rules for claims for unjust conviction and imprisonment]). Consequently, the Court concludes that the strict pleading requirements of Court of Claims Act § 11 (b) applies to claims commenced pursuant to the Child Victims Act.

"[S]ection 11(b) places five specific substantive conditions upon the State's waiver of sovereign immunity by requiring the claim to specify (1) 'the nature of [the claim]'; (2) 'the time when' it arose; (3) the 'place where' it arose; (4) 'the items of damage or injuries claimed to have been sustained'; and (5) 'the total sum claimed'" (Lepkowski, 1 NY3d at 207; see Kolnacki v State of New York, 8 NY3d 277, 280 [2007], rearg denied 8 NY3d 994 [2007]). "Although absolute exactness is not required, the claim must provide a sufficiently detailed description of the particulars of the claim to enable [the defendant] to investigate and promptly ascertain the existence and extent of its liability" (Morra v State of New York, 107 AD3d 1115, 1115-1116 [3d Dept 2013] [internal quotation marks and citation omitted]; see Lepkowski, 1 NY3d at 207). "[T]he State is not required

[* 6]

to go beyond a claim or notice of intention in order to investigate an occurrence or ascertain information which should be provided pursuant to Court of Claims Act § 11" (Matter of DeMairo v State of New York, 172 AD3d 856, 857 [2d Dept 2019] [internal quotation marks and citation omitted]). The failure to comply with the pleading requirements of Court of Claims Act § 11 (b) is a jurisdictional defect mandating dismissal of the Claim (see Lepkowski, 1 NY3d at 209).

"To adequately plead when the claim arose, the claimant must allege the date of the tort or other claim, as the case may be, with sufficient definiteness to enable the State to investigate the claim promptly and ascertain its potential liability" (Matter of Geneva Foundry Litig., 173 AD3d 1812, 1813 [4th Dept 2019]). Thus, "[i]f the claimant fails to specify the dates relevant to the elements of the claim or provides only a broad range of dates, the claim is jurisdictionally defective and properly dismissed" (id. at 1813-1814). Although Matter of Geneva Foundry Litig. is not a case commenced pursuant to the Child Victims Act, the Fourth Department has specified that "[t]he case law that has developed in non-Child Victims Act cases applies equally to Child Victims Act cases" (PB-7 Doe v Amherst Cent. Sch. Dist., 196 AD3d 9, 12 [4th Dept 2021], quoting Doe v MacFarland, 66 Misc 3d 604, 614, [Sup Ct, Rockland County 2019]).

Additionally, in evaluating claims alleging negligent hiring, supervision, training, and/or retention of a State employee who committed acts of sexual assault against a claimant, courts have held that the failure to plead the specific date(s) when the assault(s) occurred violates Court of Claims Act § 11(b) and mandates dismissal of the Claim (see e.g. Robin BB. v State of New York, 56 AD3d 932, 933 [3d Dept 2008] [allegation that a State employee "engaged in numerous acts of sexual misconduct at various locations in St. Lawrence County over the course of an eight-year period" was insufficient to satisfy Court of Claims Act § 11 (b)]; C.B. & R.B. v State of New York,

[* 7]

UID No. 2020-040-019 [Ct Cl, McCarthy, J., Apr. 29, 2020] [allegation that the movant was sexually assaulted at Marcy Correctional Facility "on multiple occasions in and around the month of July 2018 continuing until on or about September 8, 2018" failed to comply with Court of Claims Act § 11 (b)]; D.G. v State of New York, Claim No. 125975, Motion Nos. M-92928, CM-93574, [Ct Cl, Lopez-Summa, J., Oct. 7, 2019] [holding the claimant's allegation that she was sexually assaulted "during the period of June 5, 2013 through and including September 16, 2013" at Sagamore Psychiatric Center did not satisfy Court of Claims Act § 11 (b)]; C.C. v State of New York, UID No. 2016-051-011 [Ct Cl, Martin, J., Apr. 26, 2016] ["general allegations of numerous acts of sexual misconduct at unnamed locations over the course of four months do not meet the pleading requirements of section 11 (b)"]; Doe v State of New York, UID No. 2013-048-125 [Ct Cl, Bruening, J., Dec. 19, 2013] ["(t)he proposed Claim alleges that the assaults and/or sexual offenses occurred sometime after (the) Claimant arrived at the (state psychiatric center) in November 2010. (The) (c)laimant does not identify the date, or even the month, she was assaulted the first time, and the Court is left to assume that the second assault and/or sexual offense occurred four to six weeks later (before the claimant left the psychiatric center)"]).

The Court concludes that Claimant has pleaded sufficient details of the abuse to satisfy the "time when" requirement of Court of Claims Act § 11 (b) (see Lepkowski, 1 NY3d at 207; see generally Joseph v State of New York, UID No. 2007-029-038 [Ct Cl, Mignano, J., Oct. 1, 2007] [despite not pleading the exact date or location where the claimant's property was lost and/or destroyed, the claim "contain[ed] a multitude of detailed factual allegations" that allowed for the defendant to investigate its potential liability]). In particular, the Claim alleges that Claimant was placed at a Northeast facility in Schenectady for a one-year period beginning in 1993 and, shortly

[* 8]

thereafter, Schroeter, a female staff member at the facility, began sexually abusing him (see Claim ¶¶ 8, 31). Claimant asserts that the sexual abuse perpetrated by Schroeter occurred on multiple occasions in 1993 through 1994 (see id. ¶ 33). A fair construction of the Claim is that Schroeter sexually abused Claimant from the time Claimant was placed at the facility in 1993 until he left the facility in 1994. Defendant can discern when the abuse arose by reviewing Claimant's placement records to ascertain when Claimant resided at the facility and Schroeter's employment records to ascertain when Schroeter worked during Claimant's one-year placement at the facility. In sum, the Court concludes that by specifically identifying the perpetrator and pleading the specific circumstances when the abuse occurred, which can be confirmed by Claimant's placement records at the facility and Schroeter's employment records, Claimant has satisfied the "time when" pleading requirements of Court of Claims Act § 11 (b).

Defendant also contends that Claimant has not pleaded sufficient facts to satisfy the "nature of the claim" requirement of Court of Claims Act § 11 (b) (see Reilly Aff ¶ 19). The requirement in Court of Claims Act § 11 (b) that the nature of the claim be pleaded is satisfied when "[t]he manner in which [the] claimant was injured and how the defendant was negligent [is] stated or can be reasonably inferred" (Heisler v State of New York, 78 AD2d 767, 768 [4th Dept 1980]). "Conclusory or general allegations of negligence that fail to adduce the manner in which the claimant was injured and how the State was negligent do not meet its requirements" (id. at 767-768).

To support the cause(s) of action for negligence against the State for the alleged sexual misconduct, Claimant was required to allege "'that the defendant knew or should have known of [the assailant's] propensity to engage in the conduct that caused the [claimant's] injuries, and that the alleged negligent supervision or retention was a proximate cause of those injuries'" (R.A. v State of

[* 9]

New York, UID No. 2021-038-561 [Ct Cl, DeBow, J., Nov. 12, 2021] quoting Gray v Schenectady City School Dist., 86 AD3d 771, 773 [3d Dept 2011]; see J.A.B. v State of New York, UID No. 2016-015-135 [Ct Cl, Collins, J., May 17, 2016]).

The Court determines that Claimant has adequately pleaded that Defendant had notice of the sexual assault perpetrated against him at Northeast. Specifically, the Claim alleges "[o]n one occasion, Facility staff members walked by the open door of the room where Schroeter was sexually abusing and assaulting Claimant," "[n]o attempt was made by the staff members to intervene and protect Claimant from the sexual abuse and assault being perpetrated," and "[t]he sexual abuse and assaults perpetrated against Claimant by Schroeter continued after staff members witnessed Schroeter sexually abusing and assaulting Claimant" (Claim ¶ 35). Stated differently, Claimant has pleaded that there were acts of sexual abuse perpetrated against him after staff became aware of the abuse (cf. C.C., UID No. 2016-051-011 [denying late claim motion where the proposed claim contained "no allegations that prior to the alleged sexual assaults upon (the) claimant the State had actual or constructive notice of these employees' prior bad acts or previous complaints from other female prisoners about sexual abuse"]).

## Special Duty

"In determining a motion to dismiss [for failure to state a cause of action], the Court of Claims must afford a liberal construction to the claimant's pleadings, accept the allegations as true, and accord the benefit of every possible favorable inference to the claimant" (Garofolo v State of New York, 80 AD3d 858, 860 [3d Dept 2011]; see Leon v Martinez, 84 NY2d 83, 87-88 [1994]).

The first issue for the Court to decide in a negligence claim asserted against the State of New York is whether the State "'was engaged in a proprietary function or acted in a governmental

[* 10]

capacity at the time the claim arose'" (Ferreira v City of Binghamton, — NY3d —, 2022 NY Slip Op 01953, at *2 [2022], quoting Applewhite v Accuhealth, Inc., 21 NY3d 420, 425 [2013]; see Turturro v City of New York, 28 NY3d 469, 477 [2016]; T.T. v State of New York, 151 AD3d 1345, 1346 [3d Dept 2017]). "If [the State] was engaged in a proprietary function—that is, activities that 'essentially substitute for or supplement traditionally private enterprises'—it is subject to suit under ordinary negligence principles applicable to nongovernmental actors" (T.T., 151 AD3d at 1346, quoting Sebastian v State of New York, 93 NY2d 790, 793 [1999]; see Riss v City of New York, 22 NY2d 579, 581 [1968]; Drever v State of New York, 134 AD3d 19, 22 [3d Dept 2015]). Conversely, the State engages in a governmental function where its actions were "'undertaken for the protection and safety of the public pursuant to the general police powers'" (Ferreira, 2022 NY Slip Op 01953, at *3, quoting Applewhite, 21 NY3d at 425; see Tara N.P. v Western Suffolk Bd. of Coop. Educ. Servs., 28 NY3d 709, 713 [2017]; T.T., 151 AD3d at 1346). "In this category, the State remains generally immune from negligence claims, absent a special relationship between the injured party and the State" (Sebastian, 93 NY2d at 793; see T.T., 151 AD3d at 1346).

The Claim asserts that Northeast provided both foster care services and residential juvenile detention services (see Claim ¶ 12). Claimant alleges he was provided services related to residential juvenile detention (see id. ¶ 29). The Court of Appeals has held the governmental function attributed to the general police power includes "the oversight of juvenile delinquents" (Ferreira, 2022 NY Slip Op 01953, at *3, citing Applewhite, 21 NY3d at 425-426 [providing examples of governmental functions, including "oversight of juvenile delinquents"]; Sebastian, 93 NY2d at 795 ["(t)he removal of juveniles from the community by court order and their placement in public confinement—at least in part for the protection of the society as a whole—denotes a quintessentially governmental

[* 11]

activity"]). Thus, courts have held that the State engages in a governmental function in its oversight of care and treatment provided at private juvenile detention facilities and its enforcement of regulatory provisions regarding same (see Vongphakdy v State of New York, UID No. 2018-040-024 [Ct Cl, McCarthy, J., Mar. 13, 2018]; see also T.T., 151 AD3d at 1346-1347 [State acts in a governmental capacity in its oversight of care and treatment provided to developmentally disabled individuals at private, not-for-profit facility as well as in its enforcement of regulatory provisions]).

Moreover, even assuming Claimant was provided services related to foster care, it appears beyond dispute the State exercises a governmental function in its administration of the foster care system, including the placement of children in foster care (see Kochanski v City of New York, 76 AD3d 1050, 1052 [2d Dept 2010]; Avila v State of New York, UID No. 2013-028-500 [Ct Cl, Sise, P.J., Jan. 8, 2013]; Lara v City of New York, 187 Misc 2d 882, 891 [Sup Ct, New York County 2001]). Here, the claim for negligence is premised upon the manner in which Defendant oversaw the care and treatment provided to Claimant at Northeast and its enforcement of regulations governing same (see e.g. Claim ¶¶ 26, 48). Accordingly, the Court concludes that the actions, or inactions, at issue were governmental in nature (see Vongphakdy, UID No. 2018-040-024; see also T.T., 151 AD3d at 1347).

Because Defendant was acting in a governmental function in overseeing and/or regulating Northeast, the Court must evaluate whether the State "owed a special duty of care to [Claimant]" (Ferreira, 2022 NY Slip Op 01953, at *3; see Tara N.P., 28 NY3d at 714; Applewhite, 21 NY3d at 426).

> "[A] special duty can arise in three situations: (1) the [claimant] belonged to a class
> for whose benefit a statute was enacted; (2) the government entity voluntarily

assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the [State] took positive control of a known and dangerous safety condition"

(Ferreira, 2022 NY Slip Op 01953, at *3, quoting Applewhite, 21 NY3d at 426).

Only the first circumstance, the "statutory duty," is applicable here (see Claim ¶ 49 [xii] [alleging the State "fail(ed) to comply with New York Social Services Law and other applicable laws, statutes and ordinances regarding the inspection and supervision of the (Northeast) facility"]).

"To form a special relationship through breach of a statutory duty, the governing statute must authorize a private right of action" (Pelaez v Seide, 2 NY3d 186, 200 [2004]). A private right of action may be implied where "(1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the governing statute; and (3) to do so would be consistent with the legislative scheme. If one of these prerequisites is lacking, the claim will fail" (id.; see Signature Health Ctr., LLC v State of New York, 28 Misc 3d 543, 550 [Ct Cl 2010], affd 92 AD3d 11 [3d Dept 2011], lv denied 19 NY3d 811 [2012]).

Claimant alleges the State owed a duty "[t]o investigate all relevant conditions of the juvenile detention centers that might affect the child" and, more specifically, "[t]o report and investigate all known incidents of sexual abuse or aggression occurring in the juvenile detention center" (Claim ¶ 26 [b], [d]). Claimant contends the State breached these duties by "fail[ing] . . . to exercise reasonable oversight, or to advance policies, procedures and/or training to prevent foreseeable sexual abuse in juvenile detention centers, including the [Northeast] facility" (id. ¶ 48; see id. ¶ 48).

Executive Law article 19-G sets forth the powers and duties of the Office of Children and Family Services (OCFS) (also known as the "Division for Youth," [see Executive Law § 500 (3)]).

Title 2 of article 19-G specifically addresses OCFS' responsibility over "facilities" (see Executive Law §§ 502-509). Pursuant to Executive Law § 503 (1), OCFS "shall establish regulations for the operation of secure and non-secure detention facilities." The statute also provides that OCFS "may contract for or establish, operate, maintain and certify secure and non-secure detention facilities" (id. § 503 [2]) and "[e]ach social services district may establish, operate and maintain secure and non-secure detention facilities" (id. § 503 [3]). Moreover, OCFS "shall visit and inspect all facilities used for detention and make periodic reports of the operation and the adequacy of such facilities, and the need for provision for such facilities" to the appropriate County, family court judges in such County, and the Office of Court Administration (id. § 503 [4]). Further, the detention facility may only operate with a certificate from OCFS (id. § 503 [5] [a]; see also 9 NYCRR Part 180).

Courts have held "that Article 19-G of the Executive Law neither provides, nor fairly implies, that a private right of action is available" (Vongphakdy, UID No. 2018-040-024). Consequently, Claimant has failed to plead a special duty and, thus, tort liability cannot be attributed to the State (see id.; see also Matter of M.J.A v Division of Youth of the State of New York, UID No. 2008-030-572 [Ct Cl, Scuccimarra, J., Oct. 29, 2008] [dismissing claim alleging acts of sexual abuse committed by an employee of a private, not-for-profit residential facility under the supervision and accreditation of the State of New York "that alleg[ed] only very broadly that somehow the State of New York—in its capacity as a licensor with some associated investigatory capabilities—should have interceded"]).

Even assuming arguendo Claimant was placed at the Northeast facility for foster care, the analysis and conclusion does not change. "It is undisputed that the [State] has statutory duties relating to the investigation, placement and foster care of children taken into custody," which are set

forth in title 6 of article 6 of the Social Services Law (Lara, 187 Misc 2d at 890; see id. at 887 ["Title 6 (of article 6 of the Social Services Law) is a comprehensive framework providing for the reporting and investigation of child abuse and placement, care and treatment of children"]). However, as other courts have recognized, "[t]here is no evidence in the Social Services Law or otherwise that any applicable law or contract was intended to create a private right of action for money damages" (id. at 890-891; see Mark G. v Sabol, 93 NY2d 710, 722 [1999]; see also Rivera v County of Westchester, 31 Misc 3d 985, 991 [Sup Ct, Westchester County 2011] [dismissing complaint alleging municipal defendant failed to properly investigate allegations of child abuse because "there is no private right of action for money damages for claims made pursuant to title 6 of article 6 of the Social Services Law"]).

To the extent Claimant suggests that the State owes a "nondelegable duty" of care in the placement and supervision of juvenile delinquents and/or foster children (see Claimant's Memo of Law at 11-12), said argument is misguided. In advancing this contention, Claimant principally relies on Bartels v County of Westchester (76 AD2d 517 [2d Dept 1980]) and Barnes v County of Westchester (108 AD2d 50 [2d Dept 1985]). In Bartels, the Second Department held that the County owed a nondelegable duty "to exercise due care in the selection of foster parents and to oversee diligently the rendition of proper care by the foster parents" and was not immune from liability for the negligent failure to exercise such care (Bartels, 76 AD2d at 523). Similarly, Barnes, relying upon Bartels, held that a municipality is not entitled to immunity for negligent supervision and placement of a child in foster care (see Barnes, 108 AD2d at 55). However, both Bartels and Barnes were decided prior to the Court of Appeals decision in McLean v City of New York (12 NY3d 194, 203 [2009]), which held "[g]overnment action, if discretionary, may not be a basis for liability, while

ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general." Decisions involving the supervision of children in foster care decided after McLean, follow that decision in determining the parameters of governmental liability in this area (see e.g. Rivera v City of New York, 82 AD3d 647, 648 [1st Dept 2011]; Albino v New York City Hous. Auth., 78 AD3d 485, 487-492 [1st Dept 2010]; see also Avila v State of New York, UID No. 2013-028-500 [Ct Cl, Sise, J., Jan. 8, 2013] [recognizing that, in McLean, the Court of Appeals implicitly overruled earlier cases holding that governmental immunity does not apply when the allegations of negligence relate to a governmental entity's supervision of care provided by foster homes]). Thus, the cases relied upon by Claimant are inapposite here.

Additionally, Claimant's request for further discovery on the special duty issue before the motion is decided is unavailing (see Claimant's Memo of Law, at 19-20). Claimant purports to assert a special duty via statute and, as a matter of law, article 19-G of the Executive Law governing the administration of juvenile detention facilities, and title 6 of article 6 of the Social Services Law governing the administration of foster care, neither provides, nor fairly implies, a private right of action (see Vongphakdy, UID No. 2018-040-024; see also Albino, 78 AD3d at 489 [denying request for further discovery to establish special duty in response to a motion to dismiss]). In short, no further discovery will establish the existence of a special duty.

[* 16]

**Claim No. 136758, Motion No. M-97759**                                    **Page 17**

Accordingly, it is hereby

ORDERED Motion M-97759 is GRANTED and Claim No. 136758 is DISMISSED.

**Albany , New York**
**May 24, 2022**

**CATHERINE E. LEAHY-SCOTT**
**Judge of the Court of Claims**

The Court considered the following papers in deciding this motion:

(1) Notice of Motion, dated January 24, 2022.
(2) Affirmation of Thomas J. Reilly, Esq., Assistant Attorney General, dated January 24, 2022, with attachments.
(3) Affirmation of Sara A. Coletti, Esq., in Opposition to Motion, dated April 11, 2022, with attachments.
(4) Claimant's Memorandum of Law in Opposition to Motion, dated April 11, 2022.
(5) Reply Affirmation of Thomas J. Reilly, Esq., Assistant Attorney General, dated April 19, 2022.

[* 17]